**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 12SC396**

Supreme Court of Colorado.

October 28, 2013

169

Attorneys for Petitioner: The Stout Law
Firm, LLC, Stephanie Stout, Greeley, Colo-
rado, The Cooney Law Firm, William Coo-
ney, Fort Collins, Colorado.

Attorneys for Respondent: Kenneth R.
Buck, District Attorney, Nineteenth Judicial
District, Anthea Leigh Carrasco, Chief Depu-
ty District Attorney, David J. Skarka, Depu-
ty District Attorney, Greeley, Colorado.

JUSTICE HOBBS delivered the Opinion
of the Court.

¶ 1 A district court magistrate sentenced
A.S., an aggravated juvenile offender, to two
years of commitment to the Department of
Human Services ("DHS"), suspended on the
condition that A.S. successfully complete two
years of probation. The district court re-
versed the magistrate's sentencing order, va-
cated the sentence, and remanded the case
for a new sentencing hearing on the basis
that subsection (5)(a)(I)(A) of section 19–2–
601, C.R.S. (2013), authorizes only commit-
ment to DHS, with no allowance for proba-
tion. The court of appeals affirmed the dis-
trict court's decision. We granted certiorari
and reverse the judgment of the court of
appeals.[1]

¶ 2 A court must sentence an aggravated
juvenile offender as provided in section 19–2–

<hr/>

1. The issue on certiorari is:
   Whether section 19–2–601(5)(a)(I), C.R.S., pro-
   hibits a court from sentencing an aggravated
   juvenile offender to probation as a condition of

a suspended sentence to the Department of
Human Services Division of Youth Correc-
tions.

601. § 19–2–908(1)(d), C.R.S. (2013). Subsection (5)(a)(I) of section 19–2–601 provides:

> (A) For an offense other than an offense that would constitute a class 1 or 2 felony if committed by an adult, the court *may* commit the juvenile to the department of human services for a determinate period of up to five years;
>
> (B) For an offense that would constitute a class 2 felony if committed by an adult, the court *shall* commit the juvenile to the department of human services for a determinate period of at least three but not more than five years;
>
> (C) For an offense that would constitute a class 1 felony if committed by an adult, the court *shall* commit the juvenile to the department of human services for a determinate period of at least three but not more than seven years. . . .

§ 19–2–601(5)(a)(I) (emphasis added).

¶ 3 We hold that subsection (5)(a)(I)(A) of section 19–2–601 grants a court discretion to suspend a commitment to DHS on a condition of successful completion of probation for an offense that would not constitute a class 1 or 2 felony if committed by an adult.

## I.

¶ 4 On January 27, 2011, the district attorney filed a Petition in Delinquency charging A.S., a juvenile, with four counts of sexual assault on a child,[2] four counts of sexual assault on a child as part of a pattern of abuse,[3] two counts of aggravated incest,[4] and one count alleging the sentence enhancer of "aggravated juvenile offender" pursuant to section 19–2–516(4)(a)(III), C.R.S. (2013). A.S. entered a guilty plea to one count of sexual assault on a child, a class 4 felony if committed by an adult, and the sentence enhancer that identifies A.S. as an aggravated juvenile offender.[5] The parties stipulated to a sentence to DHS of three years or less,

offense-specific treatment, and registration as a sex offender. The district court magistrate accepted A.S.'s plea. On May 24, 2011, consistent with the recommendations of the pre-sentence investigation report, the magistrate sentenced A.S. to two years in DHS's Division of Youth Corrections, suspended on the condition that A.S. successfully complete two years of probation.

¶ 5 On June 8, 2011, the prosecution petitioned the district court for review of the magistrate's sentencing order pursuant to C.R.M. 7. It alleged that the sentence violated laws that control sentencing for juveniles adjudicated as aggravated juvenile offenders because they cannot be placed on probation.

¶ 6 The district court reversed the magistrate's sentencing order on July 8, 2011, concluding that "[s]entencing juveniles adjudicated as aggravated juvenile offenders is provided for in C.R.S. 19–2–601(5)," and "[t]he only sentence authorized by that subsection is to the department of human services." Viewing the Children's Code as a whole, the district court determined that the General Assembly's use of the word "may" in section 19–2–601(5)(a)(1)(A) should be construed as "shall":

> "[M]ay" as used in subsection (A) should not be interpreted to give sentencing courts the discretion whether to commit or not commit an aggravated juvenile offender to the department of human services. *Rather "may" should be interpreted to give the courts discretion whether to commit the juvenile for the five years authorized or some period less than five years.* "Shall" is used in subsections (B) and (C) because there is a minimum period of three years to the department of youth corrections that the court must impose. There are no minimum periods set in subsection (A). (Emphasis added).

The district court concluded that other sentencing options normally available for

---

2. These counts would represent class 4 felonies if committed by an adult. *See* § 18–3–405(1), C.R.S. (2013).

3. These counts would represent class 3 felonies if committed by an adult. *See* § 18–3–405(1), (2)(d).

4. These counts would represent class 3 felonies if committed by an adult. *See* § 18–6–302(2), C.R.S. (2013).

5. A.S. pleaded guilty to count 1 (the first count of sexual assault on a child) and count 11 (the aggravated juvenile offender sentence enhancer).

juvenile offenders, including probation, "specifically exclude juveniles adjudicated as aggravated juvenile offenders from such sentences." It reasoned that the legislature provided juveniles charged as aggravated juvenile offenders with the "additional procedural protections" supplied by a twelve-person jury "because of the mandatory sentencing scheme for aggravated juvenile offenders." Stating that the magistrate "may not impose a statutorily authorized sentence and suspend it upon completing a sentence that is not authorized," the district court reversed the magistrate's sentencing order, vacated the sentence, and remanded the case for a new sentencing hearing.

¶ 7 A.S. appealed the district court's decision to the court of appeals, arguing that the district court erred in concluding that his sentence to probation was illegal. Employing essentially the same reasoning as the district court, the court of appeals affirmed.

## II.

¶ 8 We hold that subsection (5)(a)(I)(A) of section 19–2–601 grants a court discretion to suspend a commitment to DHS on a condition of successful completion of probation for an offense that would not constitute a class 1 or 2 felony if committed by an adult.

¶ 9 To resolve the may/shall issue, this case requires us to invoke a range of statutory construction tools in effectuating the intent of the General Assembly. After addressing the standard of review, we examine the statutory context of the juvenile special offender sentencing provisions. Next we analyze which sentencing options the General Assembly intended to make available for aggravated juvenile offenders who are subject to subsection (5)(a)(I)(A), and we explain how the history of legislative amendments to the sentencing requirements for aggravated juvenile offenders supports the sentence the magistrate imposed in this case.

### A. Standard of Review

¶ 10 Statutory interpretation is a question of law we review de novo. See, e.g., Klinger v. Adams Cnty. Sch. Dist. No. 50, 130 P.3d 1027, 1031 (Colo.2006). When construing a statute, we ascertain and give effect to the General Assembly's intent, reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts. People in the Interest of W.P., 2013 CO 11, ¶ 10, 295 P.3d 514, 519; Moffett v. Life Care Ctrs. of Am., 219 P.3d 1068, 1072 (Colo.2009). We give the language of the statute its commonly accepted and understood meaning. Crandall v. City of Denver, 238 P.3d 659, 662 (Colo. 2010); see also § 2–4–101, C.R.S. (2013). We liberally construe statutes to fully carry out the General Assembly's intent. § 2–4–212, C.R.S. (2013).

¶ 11 In harmonizing seemingly conflicting statutes, we look to legislative history, the consequences of a given construction, and the goal of the statutory scheme. W.P., 295 P.3d at 519; Jenkins v. Panama Canal Ry. Co., 208 P.3d 238, 241 (Colo.2009); Frazier v. People, 90 P.3d 807, 811 (Colo.2004); see also § 2–4–203, C.R.S. (2013) (listing aids in construction of ambiguous statutes). When the General Assembly chooses to legislate in an area, we presume it is aware of its own prior enactments. Anderson v. Longmont Toyota, Inc., 102 P.3d 323, 330 (Colo. 2004). When interpreting a comprehensive legislative scheme, we construe each provision to further the overarching legislative intent. W.P., 295 P.3d at 519; Martin v. People, 27 P.3d 846, 851–52 (Colo.2001); see also § 2–4–203(1)(a), (g) (encouraging consideration of the object the legislature sought to attain and the "[t]he legislative declaration or purpose"). When a statute is part of a complex of sentencing prescriptions, the entire scheme should be construed to give consistent, harmonious, and sensible effect to all of its parts. Fierro v. People, 206 P.3d 460, 461 (Colo.2009).

¶ 12 We do not presume the legislature uses language idly, with no intent that meaning should be given to it. People v. J.J.H., 17 P.3d 159, 162 (Colo.2001) (citing McMillin v. State, 158 Colo. 183, 405 P.2d 672, 674 (1965)); see also § 2–4–201(1)(b), C.R.S. (2013) (directing courts to presume the General Assembly intended "[t]he entire statute . . . to be effective"). When possible,

we endeavor to reconcile potential conflicts between statutes that regulate the same conduct. *W.P.*, 295 P.3d at 519; *Moffett*, 219 P.3d at 1072. We avoid statutory interpretations that would lead to absurd results. *Frazier*, 90 P.3d at 811; *see also* § 2–4–201(1)(c) (directing courts to presume the General Assembly intended "[a] just and reasonable result"); § 2–4–203(1)(e) (encouraging consideration of "[t]he consequences of a particular construction").

¶ 13 In this case, we examine a comprehensive legislative scheme in ascertaining the General Assembly's use of the words "may" and "shall" in section 19–2–601(5)(a)(I).

### B. Juvenile Special Offender Sentencing Categories

[12] ¶ 14 The General Assembly designed the juvenile justice system to promote the overriding purposes of the Children's Code—serving child welfare and society's best interests—by "appropriately sanction[ing] juveniles who violate the law." *W.P.*, 295 P.3d at 521 (quoting § 19–2–102(1), C.R.S. (2013)); *see also* § 19–1–102(1)(a), C.R.S. (2013). The juvenile justice system aims to provide guidance, rehabilitation, and restoration for the juvenile and to protect society, rather than focusing principally on criminal conduct and assigning criminal responsibility, guilt, and punishment. *Bostelman v. People*, 162 P.3d 686, 691 (Colo.2007). Consistent with these ends, we recognize juvenile justice proceedings as civil, rather than criminal, in nature. *W.P.*, 295 P.3d at 521.

▮ ¶ 15 Whereas the adult criminal justice system emphasizes punitive penalties, the legislature intended the juvenile justice system to remain informal, flexible, and focused on rehabilitation. *J.J.H.*, 17 P.3d at 164. Consequently, a trial court normally has broad discretion to craft a sentence it deems appropriate for a particular juvenile offender. *See id.* (noting that the sentencing judge in a juvenile adjudication "is not compelled to impose a severe sentence"); *see also* § 19–2–907(1), C.R.S. (2013) (providing a palette of sentencing options from which a court selects "as appropriate"); §§ 19–2–909 to –918.5, C.R.S. (2013) (describing specific sentencing options in more detail). When a court commits a juvenile to DHS, it must determine whether removal from the home is in the juvenile's best interest, and whether there have been reasonable efforts to eliminate the need to remove the juvenile from the home. § 19–2–921(1.5)(a).

¶ 16 The General Assembly has identified four categories of juvenile special offenders subject to specific sentencing requirements: (1) mandatory sentence offenders; (2) repeat juvenile offenders; (3) violent juvenile offenders; and (4) aggravated juvenile offenders. *See J.J.H.*, 17 P.3d at 161; *see also* § 19–2–516 (defining categories); § 19–2–907(2) (requiring special offender sentencing "as provided in section 19–2–908"); § 19–2–908.

¶ 17 A "mandatory sentence offender" is a juvenile who is adjudicated delinquent (and/or revoked from probation for a delinquent act) for a third time. *See* § 19–2–516(1). A "repeat juvenile offender" is a juvenile previously adjudicated delinquent who is either adjudicated delinquent for an act that constitutes a felony or revoked from probation for an act that constitutes a felony. § 19–2–516(2). A court must sentence these categories of offenders "out of the home for not less than one year, unless the court finds that an alternative sentence or a commitment of less than one year out of the home would be more appropriate." § 19–2–908(1)(a), (b).

¶ 18 A "violent juvenile offender" is a juvenile who is adjudicated delinquent for an act that constitutes a crime of violence. § 19–2–516(3). Section 19–2–908(1)(c)(I)(A) requires a court to sentence this category of offender "out of the home for not less than one year" unless the juvenile is ten to twelve years of age and "the court finds that an alternative sentence or a commitment of less than one year out of the home would be more appropriate."

¶ 19 Finally, an "aggravated juvenile offender" is: (1) a juvenile adjudicated delinquent or revoked from probation for an act "that constitutes a class 1 or class 2 felony"; (2) a juvenile previously adjudicated delinquent for an "act that constitutes a felony" who is adjudicated delinquent or revoked from probation for an "act that constitutes a

crime of violence"; or (3) a juvenile adjudicated delinquent or revoked from probation for an "act that constitutes felonious unlawful sexual behavior ..., incest ..., or aggravated incest...." § 19–2–516(4).[6] A court must "sentence an aggravated juvenile offender as provided in section 19–2–601." § 19–2–908(1)(d). Section 19–2–601 provides as follows:

(5)(a)(I) Upon adjudication as an aggravated juvenile offender:

(A) For an offense other than an offense that would constitute a class 1 or 2 felony if committed by an adult, the court *may* commit the juvenile to the department of human services for a determinate period of *up to five years;*

(B) For an offense that would constitute a class 2 felony if committed by an adult, the court *shall* commit the juvenile to the department of human services for a determinate period of *at least three but not more than five years;*

(C) For an offense that would constitute a class 1 felony if committed by an adult, the court *shall* commit the juvenile to the department of human services for a determinate period of *at least three but not more than seven years....*

§ 19–2–601(5)(a)(I) (emphasis added). DHS may place a juvenile committed to it "in the Lookout Mountain school, the Mount View school, or any other training school or facility," or it may make "any other disposition ... as provided by law." § 19–2–909(2).

Commitment of an aggravated offender to DHS is followed by a mandatory period of parole. *See* § 19–2–909(1)(b).

¶ 20 The district court and court of appeals both interpreted the General Assembly's use of the word "may" in subsection (5)(a)(I)(A) as simply giving courts greater discretion to determine the length of a sentence of commitment to DHS. They noted that, whereas subsections (5)(a)(I)(B) and (C) include mandatory minimums of three years, subsection (5)(a)(I)(A) includes no minimum time of commitment. The prosecution argued that we must interpret the word "may" in subsection (5)(a)(I)(A) in the same way as the word "shall" in subsections (5)(a)(I)(B) and (C), mandating commitment for all aggravated juvenile offenders. But we agree with A.S. that the General Assembly's use of "may" in subsection (5)(a)(I)(A) affords the court discretion for other than class 1 or 2 felonies to suspend a commitment to DHS on a condition of successful completion of probation.

**C. Sentencing Options Available for Aggravated Juvenile Offenders Subject to Subsection (5)(a)(I)(A) of Section 19–2–601**

¶ 21 The prosecution argues that reading section 19–2–601(5)(a)(I) in *pari materia* with related provisions that create a comprehensive program for sentencing juvenile offenders requires us to interpret the word "may" in subsection (5)(a)(I)(A) to mean "shall." However, the legislature's use of the term "may" is generally indicative of a grant of discretion or choice among alternatives.[7] *People v. Triantos,* 55 P.3d 131, 134

---

6. A.S. falls within the third subcategory of aggravated juvenile offender, defined in section 19–2–516(4)(III).

7. Where a permissive construction of the word "may" does not fulfill the legislative purpose underlying a statute, we will construe the word "to impose the mandatory requirement associated with the word 'shall.'" *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1113 (Colo.1990). The prosecution cites three of our cases to support their argument that we should interpret "may" in subsection (5)(a)(I)(A) to mean "shall": *Danielson; People v. Hoehl,* 193 Colo. 557, 568 P.2d 484 (1977); and *Duprey v. Anderson,* 184 Colo. 70, 518 P.2d 807 (1974). None of these cases is applicable here. In *Hoehl* and *Duprey,*

we interpreted "may" to require greater certainty based on our presumption that the General Assembly intends its enactments to be constitutional. *See Hoehl,* 568 P.2d at 486 (interpreting "may" in statute criminalizing placing a child "in a situation that may endanger the child's life or health" to mean that the situation must pose a reasonable probability of endangerment, not merely a possibility of endangerment, in order to avoid unconstitutional vagueness); *Duprey,* 518 P.2d at 810–11 (interpreting "may" in a statute stating that "the county clerk may mail postal cards to all [ ] purged electors informing them that their names have been purged from the registration books of the county clerk for failure to vote at [the preceding] general election" to mean "shall" in order to avoid due process viola-

(Colo.2002); *see also People v. Dist. Court*, 713 P.2d 918, 922 n. 7 (Colo.1986) (explaining that, while "shall" is most commonly mandatory in effect, "may" is usually permissive or directory). "Where both mandatory and directory verbs are used in the same statute, ... it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs should carry with them their ordinary meanings." Norman J. Singer & J.D. Shambie Singer, 3 *Sutherland Statutory Construction* § 57:11 (7th ed.). "This is especially true where 'shall' and 'may' are used in close juxtaposition...." *Id.*

¶ 22 Section 19–2–601(5)(a)(I)(A)'s use of the permissive "may" allows a court significant discretion to craft a sentence it deems appropriate for an aggravated juvenile offender adjudicated delinquent "[f]or an offense other than an offense that would constitute a class 1 or 2 felony if committed by an adult." The only restriction this provision imposes on a sentencing court's discretion is that it may not commit such a juvenile to DHS for a term of more than five years. By contrast, through the General Assembly's use of the mandatory "shall," subsections (5)(a)(I)(B) and (C) of section 19–2–601 com-

pel commitment of an aggravated juvenile offender adjudicated delinquent "[f]or an offense that would constitute a class 2 [or class 1] felony if committed by an adult" to DHS. Providing courts greater flexibility in sentencing the least serious subcategory of juvenile offenders is consistent with the purposes of the juvenile justice system: serving child welfare and society's best interests by "appropriately sanction[ing] juveniles who violate the law." *W.P.*, 295 P.3d at 521 (quoting § 19–2–102(1)).

¶ 23 Section 19–2–601(5)(a)(I) does not operate in a vacuum. Restrictive language explicitly limits a court's application of each of the generally available sentencing options the General Assembly supplies in sections 19–2–909 to –917. For example, section 19–2–909 is applicable "[e]xcept as otherwise provided in sections 19–2–601 and 19–2–921 [8] for an aggravated juvenile offender." § 19–2–909(1)(a) (providing for commitment to DHS). Most of the remaining sections begin with a similar clause: "Except as otherwise provided in section 19–2–601 for an aggravated juvenile offender..." § 19–2–910(1), (2) (providing for commitment of a person eighteen years of age or older to DHS, the county jail, or a community correctional facil-

---

tions and render the statute constitutional). Finally, in *Danielson*, we reconciled a clear conflict between the body of state law allowing a water user to use water out of priority *only* where that user avoids injury to senior water rights holders (in part by replacing any depletions) with a statutory provision that appeared to make replacement optional. *See* 791 P.2d at 1112–14. In that case, we interpreted section 37–90–137(9)(c), which provided that "decrees *may* also require the continuation of replacement after withdrawal ceases if necessary to compensate for injurious stream depletions caused by prior withdrawals from such wells." In order to effectuate the legislative policy underlying the statute—protecting vested water rights—we interpreted "may" to mean "shall" and held that once there is a determination that injurious depletions to vested water rights occur after pumping ceases, the statute mandated that a plan for augmentation replace such depletions. *Id.* at 1113–14. There is no such obvious conflict here.

**8.** Section 19–2–921 contains more details about commitment to DHS and substantially mirrors section 19–2–601(5)(a)(I)(A) –(C)'s language at subsection (3)(b):

(I) The juvenile court *may* commit any juvenile adjudicated as an aggravated juvenile offender for an offense other than an offense

that would constitute a class 1 or class 2 felony if committed by an adult to the department of human services for a determinate period of up to five years.

(II) The juvenile court *shall* commit any juvenile adjudicated as an aggravated juvenile offender for an offense that would constitute a class 2 felony if committed by an adult to the department of human services for a determinate period of at least three but not more than five years.

(III) The juvenile court *shall* commit any juvenile adjudicated as an aggravated juvenile offender for an offense that would constitute a class 1 felony if committed by an adult to the department of human services for a determinate period of at least three but not more than seven years.

§ 19–2–921(3)(b), C.R.S. (2013) (emphasis added). In addition, subsection (3)(c) allows a court to "commit any juvenile who is *not* adjudicated an aggravated juvenile offender but is adjudicated for an offense that would constitute a felony or a misdemeanor to the department of human services" for a determinate period of two years or less. § 19–2–921(3)(c) (emphasis added); *see also* § 19–2–909(1)(a).

ity); § 19–2–911(1) (providing for sentencing to an alternative services program or detention); § 19–2–912 (providing for placement "in the legal custody of a relative or other suitable person"); § 19–2–913(1)(a) (providing for placement on probation or under the protective supervision of a parent or guardian); § 19–2–915 (providing for placement "in the county department of social services"); § 19–2–916(1) (providing for placement "in a hospital or other suitable facility"); § 19–2–917 (providing for imposition of a fine). Section 19–2–914 uses the abbreviated phrase, "[e]xcept as otherwise provided in section 19–2–601." § 19–2–914 (providing for a sentence of participation "in the community accountability program").

¶ 24 The prosecution argues the General Assembly's inclusion of limiting language in sections 19–2–909 to –917 bars a court from using any of these sentencing options for an aggravated juvenile offender. It asserts that, because the General Assembly did not specify "except as otherwise provided in section 19–2–601(5)(a)(I)(B) and (C)" or "except as otherwise provided in section 19–2–601 for an aggravated juvenile offender who is adjudicated on a class 1 or 2 felony," it intended to exclude *all* aggravated juvenile offenders from these sentencing options. This argument is unpersuasive.

¶ 25 First, there is nothing inherent in the phrase "except as otherwise provided in" which would lead us to adopt the prosecution's construction. Section 19–2–913 allows a court to sentence an aggravated juvenile offender to probation unless something in section 19–2–601 provides otherwise.[9] Subsections (5)(a)(I)(B) and (C) of section 19–2–601 explicitly provide otherwise: they mandate a sentence to DHS for a juvenile adjudicated delinquent for an offense that would constitute a class 1 or 2 felony if committed by an adult. However, because an aggravated juvenile offender adjudicated delinquent "[f]or an offense other than an offense that would constitute a class 1 or 2 felony if committed by an adult" *may* receive another type of sentence, by its plain language, sub-

section (5)(a)(I)(A) imposes no limitation on the availability of a sentence of probation under section 19–2–913.

¶ 26 Second, the General Assembly's actual usage of "except as otherwise provided in" and similar phrases in other statutory provisions does not compel a contrary reading. While the General Assembly sometimes zeroes in on a specific exception within a statutory provision when it uses the qualifier "except as otherwise provided in . . .," it commonly references language that forms the basis for an exception less precisely. *Compare, e.g.,* § 19–2–518, C.R.S. (2013) (requiring a district court judge to sentence a juvenile, whose criminal charges have been transferred to that court, according to section 18–1.3–401, C.R.S. (2013), "[e]xcept as otherwise provided in subparagraph (II) of this paragraph (d)"), *with, e.g.,* § 18–1–405(1), C.R.S. (2013) (requiring discharge of a defendant not brought to trial within six months of entering a plea of not guilty "[e]xcept as otherwise provided in this section"), *and* § 18–18–414(1), C.R.S. (2013) (providing that "[e]xcept as otherwise provided in this article or in article 42.5 of title 12, C.R.S., the following acts are unlawful: . . .").

¶ 27 Exceptions should not swallow the rule. The exception pertaining to aggravated juvenile offenders contained in section 19–2–911 provides for sentencing to alternative services and detention when read in conjunction with the "may" provision of subsection (5)(a)(I)(A), applicable to offenses that would not constitute a class 1 or 2 felony if committed by an adult. It states:

*Except as otherwise provided in section 19–2–601 for an aggravated juvenile offender . . . , the court may sentence the juvenile to alternative services funded through section 19–2–212 or other alternative services programs. If a juvenile who is twelve years of age or older fails to make satisfactory progress in the alternative services to which he or she is sentenced or if the court finds that a sentence to alternative services would be contrary to the community interest, the court may*

---

**9.** It reads: "Except as otherwise provided in section 19–2–601 for an aggravated juvenile offender[,] . . . [t]he court may place the juvenile on probation . . . under such conditions as the court may impose." *See* § 19–2–913(1), (1)(a).

*sentence any juvenile adjudicated for an offense that would constitute a class 3, class 4, class 5, or class 6 felony or a misdemeanor if committed by an adult to detention* for a period not to exceed forty-five days. Release for purposes of work, therapy, education, or other good cause may be granted by the court. *The court may not sentence to detention any juvenile adjudicated for an offense that would constitute a class 1 or class 2 felony if committed by an adult.*

§ 19–2–911(1) (emphasis added). Although the exception stated in the final sentence of the provision does not explicitly reference section 19–2–601 or aggravated juvenile offenders, it logically references subsections (5)(a)(I)(B) and (C) of section 19–2–601: a juvenile adjudicated delinquent for an offense that would constitute a class 1 or class 2 felony if committed by an adult is an aggravated juvenile offender, *see* § 19–2–516(4)(a)(I), who must be sentenced to DHS under subsection (5)(a)(I)(B) or (5)(a)(I)(C) of section 19–2–601. By contrast, no part of section 19–2–911 explicitly or implicitly bars a court from giving an aggravated juvenile offender adjudicated "[f]or an offense other than an offense that would constitute a class 1 or 2 felony if committed by an adult" a sentence of detention. § 19–2–601(5)(a)(I)(A).

### D. Legislative Amendments to the Sentencing Requirements for Aggravated Juvenile Offenders

¶ 28 As the session laws demonstrate, legislative amendments to the sentencing requirements for aggravated juvenile offenders support our reading of section 19–2–601(5)(a)(I)(A). The General Assembly added the aggravated juvenile offender category in 1984. *See Rocha v. People*, 713 P.2d 350, 353 n.3 (Colo.1986). Prior to 1996, when the General Assembly renumbered and extensively revised the statutory authority for the juvenile justice system,[10] courts could commit aggravated juvenile offenders to DHS for

10. *See* H.B. 96–1005, ch. 283, sec. 1, §§ 19–2–101 to –1004, 1996 Colo. Sess. Laws 1595, 1595–1679 (effective Jan. 1, 1997).

11. The precursors to current section 19–2–601 allowed a court to commit an aggravated juvenile offender for a term of five years. *See* § 19–

five years but were not required to do so.[11] As part of the 1996 revisions, the General Assembly designated three subcategories of aggravated juvenile offenders and defined different sentencing requirements for each:

(6)(5)(a)(I) Upon adjudication as an aggravated juvenile offender:

(A) FOR AN OFFENSE OTHER THAN AN OFFENSE THAT WOULD CONSTITUTE A CLASS 1 OR 2 FELONY IF COMMITTED BY AN ADULT, the court *may* commit the juvenile to the department of human services for a determinate period of *UP TO five years;*

(B) FOR AN OFFENSE THAT WOULD CONSTITUTE A CLASS 2 FELONY IF COMMITTED BY AN ADULT, THE COURT *SHALL* COMMIT THE JUVENILE TO THE DEPARTMENT OF HUMAN SERVICES FOR A DETERMINATE PERIOD OF *UP TO FIVE YEARS;*

(C) FOR AN OFFENSE THAT WOULD CONSTITUTE A CLASS 1 FELONY IF COMMITTED BY AN ADULT, THE COURT *SHALL* COMMIT THE JUVENILE TO THE DEPARTMENT OF HUMAN SERVICES FOR A DETERMINATE PERIOD OF *UP TO SEVEN YEARS....*

Ch. 283, sec. 1, § 19–2–601(5)(a)(I), 1996 Colo. Sess. Laws 1595, 1648 (emphasis added). The first subcategory maintained the original permissive sentencing language but clarified that the court could commit that subcategory of aggravated juvenile offender to DHS for five years or less. *See id.* § 19–2–601(5)(a)(I)(A) (adding the words "up to"). Aside from the substitution of "shall" for "may," the sentencing requirements for the second subcategory of aggravated juvenile offenders were identical to those for the first subcategory. *Compare id.* § 19–2–

2–804(6)(a), C.R.S. (1996) (providing that, "[u]pon adjudication as an aggravated juvenile offender, the court *may* commit the juvenile to the department of human services for a determinate period of five years" (emphasis added)); *see also Rocha*, 713 P.2d at 353 n. 3.

601(5)(a)(I)(A) (providing that "the court *may* commit the juvenile to the department of human services for a determinate period of up to five years") (emphasis added), *with id.* § 19–2–601(5)(a)(I)(B) (providing that "the court *shall* commit the juvenile to the department of human services for a determinate period of up to five years") (emphasis added). Finally, the third subcategory required sentencing to DHS for up to seven years. *See id.* § 19–2–601(5)(a)(I)(C).

¶ 29 We presume that the legislature does not use language idly. *J.J.H.,* 17 P.3d at 162. If the General Assembly did not intend to distinguish the sentencing requirements for the first two subcategories of aggravated juvenile offenders by using "may" in one and "shall" in the other, it would have created only two subcategories [12] and used the word "shall" in both. Instead, we conclude the General Assembly intended the words "may" and "shall" to indicate a difference in sentencing discretion, separating the first subcategory of aggravated juvenile offenders— those adjudicated delinquent for lesser offenses—from the second subcategory. Our interpretation of section 19–2–601(5)(a)(I) ensures that the entire statute is effective, achieves a just and reasonable result that is feasible to execute, and serves the public interest. *See* § 2–4–201(1)(b)–(e). First, for those subject to subsection (5)(a)(I)(A), the General Assembly intended to allow a court to impose a sentence to DHS of up to five years or to select some other, more appropriate sentencing option. Second, for those subject to subsection (5)(a)(I)(B), it intended to mandate a sentence of commitment of up to five years. And, finally, for those subject to subsection (5)(a)(I)(C), it intended to mandate a sentence of commitment of up to seven years.

¶ 30 At the same time the General Assembly subdivided section 19–2–601(5)(a)(I)— maintaining flexibility in sentencing under subsection (A) while introducing the mandatory provisions (B) and (C)—it introduced the "except as otherwise provided in section 19–2–601" restrictions to sections 19–2–909 to –917.[13] Indeed, the restrictions logically represent the General Assembly's effort to eliminate potential conflict between the general sentencing provisions and subsections (5)(a)(I)(B) and (C) of section 19–2–601. We presume the General Assembly also intended the restrictions to work in harmony with subsection (5)(a)(I)(A), not to render it immediately indistinguishable from the newly created subsection (5)(a)(I)(B).

¶ 31 In 1999, section 19–2–601(5)(a)(I) achieved its modern form when the General Assembly introduced minimum sentences of three years for aggravated juvenile offenders subject to subsections (5)(a)(I)(B) and (C), further differentiating subsection (5)(a)(I)(B) from (5)(a)(I)(A). *See* ch. 13, sec. 1, § 19–2–601(5)(a)(I), 1999 Colo. Sess. Laws 33, 33–34 (replacing the phrase "up to" in both subsections with the phrase "at least three but not more than," resulting in mandatory sentences to DHS of "at least three but not more than five years" for those subject to subsection (5)(a)(I)(B) and "at least three but not more than seven years" for those subject to subsection (5)(a)(I)(C)). Subsection (5)(a)(I)(A)'s language has remained static since the 1996 amendments, and our interpretation of it holds in both the pre- and post–1999 statutory contexts. *Cf.* § 2–4–208, C.R.S. (2013) ("A statute which is reenacted, revised, or amended is intended to be a continuation of the prior statute and not a new enactment, insofar as it is the same as the prior statute.").

12. The first subcategory would encompass all aggravated juvenile offenders adjudicated delinquent for an offense other than an offense that would constitute a class 1 felony if committed by an adult. The second subcategory would include only aggravated juvenile offenders adjudicated delinquent for an offense that would constitute a class 1 felony if committed by an adult, as the third subcategory does now.

13. *See* ch. 283, sec. 1, §§ 19–2–909 to –917, 1996 Colo. Sess. Laws 1595, 1662–66. For example, before the 1996 amendments, the probation pro-

vision read simply, "[t]he court may place the juvenile on probation or under protective supervision in the legal custody of one or both parents or the guardian under such conditions as the court may impose." § 19–2–703(1)(f), C.R.S. (1995). The 1996 amendments changed the location of the probation provision and prefaced the same language with the phrase "[e]xcept as otherwise provided in section 19–2–601 for an aggravated juvenile offender." § 19–2–913(1), (1)(a), C.R.S. (1997).

### E. Other Indications of the General Assembly's Intent

¶ 32 The prosecution maintains that the General Assembly signaled its intent to mandate a commitment sentence, without the possibility of probation, for all aggravated juvenile offenders by designating this category of juvenile special offenders as the most serious and granting it heightened procedural protections. It argues that the criteria in section 19–2–516 defining each successive class of special offender (mandatory sentence offender, repeat juvenile offender, violent juvenile offender, and aggravated juvenile offender) are progressively more serious, and urges us to interpret the corresponding sentencing requirements to mirror this progression.

¶ 33 Recall that, while mandatory sentence offenders and repeat juvenile offenders may be sentenced at the court's discretion upon a finding "that an alternative sentence or a commitment of less than one year out of the home would be more appropriate," § 19–2–908(1)(a), (b), a court must generally sentence violent juvenile offenders "out of the home for not less than one year," § 19–2–908(1)(c)(I)(A). Non-aggravated juvenile offenders could face commitment to DHS for "up to two years if the juvenile is adjudicated for an offense that would constitute a felony or a misdemeanor if committed by an adult." See § 19–2–909(1)(a); see also § 19–2–921(3)(c). Finally, a court "may commit" an aggravated juvenile offender subject to subsection (5)(a)(I)(A) of section 19–2–601 to DHS for "up to five years," "shall commit" an aggravated juvenile offender subject to subsection (5)(a)(I)(B) to DHS for "at least three but not more than five years," and "shall commit" an aggravated juvenile offender subject to subsection (5)(a)(I)(C) to DHS for "at least three but not more than seven years."

¶ 34 Whereas the lesser categories of special offenders (and non-special offenders) have no right to a trial by jury, alleged violent juvenile offenders have the right to demand trial by a six-person jury. See § 19–2–107(1). Alleged aggravated juvenile offenders share the right to demand a six-person jury, see id., but have the additional right to demand the enhanced due process protections of a twelve-person jury, see § 19–2–601(3)(a) (requiring a twelve-person jury upon timely demand).

¶ 35 The prosecution suggests that interpreting subsection (5)(a)(I)(A) of section 19–2–601 to allow a court to grant an aggravated juvenile offender probation produces an absurd result. It points out that a court must first make a specific finding that such a sentence would be more appropriate than commitment out of the home for a mandatory sentence offender or repeat juvenile offender, see § 19–2–908(1)(a), (b), and that courts generally lack discretion to sentence violent juvenile offenders "in the home," § 19–2–908(1)(c)(I)(A). It argues that allowing courts discretion to sentence an aggravated juvenile offender subject to subsection (5)(a)(I)(A) of section 19–2–601 to probation is inconsistent with this most serious category of juvenile special offenders. Similarly, it suggests a twelve-person jury makes sense only if an aggravated juvenile offender faces mandatory commitment if convicted.

¶ 36 The prosecution's arguments are unpersuasive. First, as we have already explained, we perceive no blatant conflict between the sentencing provisions for the various juvenile special offender categories, the language and history of legislative amendments to subsection (5)(a)(I)(A), and related provisions, which collectively demonstrate the General Assembly's intent for the word "may" to retain its traditional, permissive meaning in that subsection. The increased due-process protections of a twelve-person jury are not lost on those subject to subsection (5)(a)(I)(A). It allows a court to commit an offender subject to it for "up to five years," § 19–2–601(5)(a)(I)(A), three years longer than the maximum sentence of commitment a court may impose on a non-aggravated juvenile offender, see § 19–2–909(1)(a). Exposure to such a significant sentence serves as ample justification for heightened due process protections.

¶ 37 We observe that both the general sentencing scheme for juvenile special offenders and an alleged aggravated juvenile offender's right to a twelve-person jury pre-

dated the 1996 amendments which introduced the three subcategories of aggravated juvenile offenders. *See* ch. 283, sec. 1, §§ 19–2–601(3)(a), 19–2–601(5)(a)(I), 19–2–908, 1996 Colo. Sess. Laws 1595, 1647, 1648, 1661–62. Consequently, we presume the General Assembly was aware of this preexisting framework when it passed the 1996 amendments and saw no cause for concern. *See Anderson*, 102 P.3d at 330 (explaining that, when the General Assembly chooses to legislate, we presume it is aware of its own enactments).

¶ 38 The General Assembly has made no modifications to section 19–2–516 (defining the juvenile special offender categories), section 19–2–601(3)(a) (providing aggravated juvenile offenders with the right to a twelve-person jury), section 19–2–601(5)(a)(I) (describing sentencing requirements for the three subcategories of special offenders), section 19–2–908 (listing sentencing requirements for the other special offender categories), or sections 19–2–909 to –917 (defining the general sentencing options for juvenile offenders) that would suggest we should construe the word "may" in subsection (5)(a)(I)(A) of section 19–2–601 to mean "shall." We interpret the subsection accordingly.

¶ 39 We also observe significant differences in the text and history of the provisions governing violent juvenile offenders and aggravated juvenile offenders. The General Assembly has required that violent juvenile offenders be placed out of the home for not less than one year and specifically precludes an alternative sentence except for a child between ten and twelve years of age:

> [Violent juvenile offenders] shall be placed or committed out of the home for not less than one year; except that this sub-sub-paragraph (A) shall not apply to a juvenile who is ten years of age or older, but less than twelve years of age, when the court finds that an alternative sentence or a

commitment of less than one year out of the home would be more appropriate.

§ 19–2–908(1)(c)(I)(A). The general structure of this statutory requirement—one year minimum removal for violent juvenile offenders, with a discretionary exception for offenders in a certain age range—evolved as the General Assembly reduced and eliminated a minimum age from the definition of "violent juvenile offender." When the General Assembly created the violent juvenile offender category in 1977, it only included juveniles at least fifteen years old and mandated one-year removal from the home for all violent juvenile offenders. Ch. 237, sec. 1, §§ 19–1–103(28), 19–3–113.1(1), 1977 Colo. Sess. Laws 995, 997. Later, the General Assembly lowered the minimum age for violent juvenile offenders to thirteen and allowed alternative sentences for violent juvenile offenders younger than fifteen. *See* ch. 138, sec. 1, §§ 19–2–803(1)–(2), 1987 Colo. Sess. Laws 737 (repeal and reenactment of Children's Code). In 1996, the General Assembly eliminated a minimum age from the definition of "violent juvenile offender" and lowered the age range for juveniles eligible for alternative sentencing to its current level. Ch. 283, sec. 1, §§ 19–2–516(3), 19–2–908(1)(c)(I)(A), 1996 Colo. Sess. Laws 1595, 1640, 1662. As described above, the legislature has taken a different approach to sentencing aggravated juvenile offenders. While the original definition of aggravated juvenile offenders included a minimum age,[14] the 1996 revisions eliminated the minimum age and structured sentencing discretion for these juveniles based on their offenses, not their ages. Ch. 283, sec. 1, §§ 19–2–516(4)(a)(I), 19–2–601(5)(a)(I), 1996 Colo. Sess. Laws 1595, 1640, 1648.

¶ 40 The legislature has exercised its prerogative to limit sentencing discretion for these two types of offenders in different ways. The prosecution suggests that the plain meaning of subsection (5)(a)(I)(A) creates an absurd inequity between violent juve-

---

14. The original definition of "aggravated juvenile offender" included only juveniles at least twelve years old who commit an act that would constitute murder if committed by an adult, and juveniles at least sixteen years old who commit an act that would constitute a felony if committed by an adult and who subsequently commit an act that would constitute a crime of violence if committed by an adult. S.B. 127, ch. 142, sec. 1, § 19–1–103(2.1), 1984 Colo. Sess. Laws 566, 566 (effective July 1, 1984).

nile offenders and aggravated juvenile offenders. It is not absurd, however, for the General Assembly to provide for a mandatory sentencing period for violent crimes but not for aggravated offenses that are neither class 1 or 2 felonies nor crimes of violence.[15] This is consistent with sentencing in the adult context, where offenders are subject to longer mandatory sentences for crimes of violence. *See* § 18–1.3–406(1)(a). That is, adult offenders face a longer mandatory minimum sentence for committing a class 6 felony that is a crime of violence (for instance, assault in the second degree under section 18–3–203(2)(a), C.R.S. (2013)) than a class 6 felony that is non-violent unlawful sexual behavior (for instance, indecent exposure under section 18–7–302(4), C.R.S. (2013)). The prosecution's interpretation of subsection (5)(a)(I)(A)—substituting "shall" for "may"—contradicts the General Assembly's decision to include a mandatory out-of-home placement of at least one year for violent offenders in section 19–2–908(1)(c)(I)(A) but to not include such a mandate for aggravated offenders in subsection (5)(a)(I)(A).

¶ 41 In sum, subsection (5)(a)(I)(A) of section 19–2–601 does not preclude probation for an aggravated juvenile offender adjudicated for other than a class 1 or 2 felony if committed by an adult.

## F. Application to this Case

¶ 42 In this case, the district court magistrate sentenced A.S. to two years to DHS, suspended on the condition that A.S. successfully complete two years of probation. The district court reversed the magistrate's sentencing order, vacated the sentence, and remanded the case for a new sentencing hearing based on its belief that subsection (5)(a)(I)(A) precludes probation. The court

of appeals affirmed the district court's decision. However, subsection (5)(a)(I)(A) of section 19–2–601 does not preclude probation for an aggravated juvenile offense not constituting a class 1 or 2 felony if committed by an adult.

¶ 43 A.S. pleaded guilty to one count of sexual assault on a child—an offense that would constitute a class 4 felony if committed by an adult—and the aggravated juvenile offender sentence enhancer. While the magistrate could have committed A.S. to DHS under subsection (5)(a)(I)(A) without suspending it for a period of probation, it opted otherwise. It suspended the commitment to DHS on the condition that A.S. successfully complete two years of probation. The magistrate's sentencing in this case is permissible under subsection (5)(a)(I)(A).

## III. Conclusion

¶ 44 Accordingly, we reverse the judgment of the court of appeals. We uphold the sentence the magistrate imposed.

JUSTICE BOATRIGHT dissents, and JUSTICE EID joins in the dissent.

JUSTICE BOATRIGHT, dissenting.

¶ 45 In interpreting the aggravated juvenile offender sentencing rules, the majority translates the phrase, "the court may commit the juvenile to the department of human services for a determinate period of up to five years," into, "the juvenile may be sentenced to probation." Under the majority's construction, the juvenile in this case will be treated more leniently than if he were adjudicated a less serious category of juvenile offender. I do not believe that the General Assembly intended such an inequitable result. I interpret the sentencing provision at

15. As discussed in II.B., *supra*, the definition of "aggravated juvenile offender" includes three groups of offenders: (1) juveniles who commit an act constituting a class 1 or class 2 felony; (2) juveniles previously adjudicated delinquent for an "act that constitutes a felony" who are adjudicated delinquent or revoked from probation for an "act that constitutes a crime of violence"; and (3) juveniles who commit an act constituting felonious unlawful sexual behavior, incest, or aggravated incest. § 19–2–516(4). Aggravated

juvenile offenders in the first category are always subject to a minimum sentencing period. § 19–2–601(5)(a)(I)(B)–(C). Offenders in the second category are subject to a minimum sentencing period as violent juvenile offenders, as long as the offense is established through adjudication. § 19–2–516(3); § 19–2–908(1)(c)(I)(A); *see also People in Interest of D.G.*, 733 P.2d 1199 (Colo. 1987) (upholding prosecutors' discretion to either petition for adjudication or revocation of probation, where either process would trigger special offender classification for a juvenile).

issue in this case as requiring a court to commit an aggravated juvenile offender to the department of human services for a specific term that can be for as long as five years and that the juvenile may not instead be sentenced to probation. Hence, I respectfully dissent.

¶ 46 When the sentencing provisions for an aggravated juvenile offender are read in the context of the entire juvenile sentencing scheme, it is evident that the General Assembly identified this class of juveniles as posing the most serious risk to public safety in the juvenile system. As a result, aggravated juvenile offenders are treated differently than any other juveniles within the juvenile system. While they are still treated as juveniles and their best interest remains a strong consideration, by adjudicating them as aggravated juvenile offenders, the most serious classification in the juvenile system, the General Assembly excluded them from being eligible for any sentence other than a commitment to the department of human services. Hence, the court must impose a sentence that includes commitment to the department of human services for a determinate period of time and the only discretion the court has in sentencing an aggravated juvenile offender is the length of the commitment.

¶ 47 I reach my conclusion that the General Assembly intended to impose a mandatory sentence of commitment to the department of human services for a determinate period of time for aggravated juvenile offenders by first considering the general purpose of the Children's Code. From there I examine the way that the Children's Code distinguishes between a delinquent act, repeated delinquent acts, delinquent acts that are escalating in severity, and delinquent acts that would be felonies if committed by an adult. Next, I evaluate how the Children's Code treats and sentences juveniles adjudicated of acts of increasing severity. I also review the section of the Children's Code related to sentencing a juvenile to probation and conclude that the General Assembly intended that this section not apply to juveniles adju-

dicated aggravated juvenile offenders. I conclude by contrasting my interpretation of the Children's Code with the majority's interpretation by applying each to the facts of this case.

## I. General Purpose of Article II of the Children's Code

¶ 48 The General Assembly intended for the Children's Code to serve the welfare of children and the best interest of society. § 19–1–102(2), C.R.S. (2013). As such, the General Assembly recognized that juveniles who violate the law should be treated differently than adults. To that end, the General Assembly created a separate statutory system within the Children's Code, Article II, to handle the treatment and sentencing of juveniles who commit a delinquent act.[1] § 19–2–102. Article II of the Children's Code focuses on both the rehabilitation and accountability of the juvenile delinquent while holding public safety paramount. *Id.*; *Bostelman v. People*, 162 P.3d 686, 692 (Colo.2007). Thus, the Children's Code's treatment of juveniles adjudicated delinquents stands in sharp contrast to the adult criminal system which focuses primarily on punishment, deterrence, and retribution. *Bostelman*, 162 P.3d at 692.

¶ 49 To promote its goal of rehabilitating juvenile delinquents, the Children's Code generally provides a court with broad discretion to craft an appropriate sentence: one that will best encourage rehabilitation of the juvenile while also protecting the public welfare. *Id.*; *People v. J.J.H.*, 17 P.3d 159, 163–64 (Colo.2001). Therefore, normally a court's discretion when sentencing a juvenile adjudicated a delinquent is very broad and ranges all of the way from simply requiring a juvenile to write a letter of apology to, at the upper limit, sentencing a juvenile to commitment to the department of human services for a period not to exceed two years. *See* §§ 19–2–907, –909, C.R.S. (2013). For example, a court could find that under a certain set of circumstances, an appropriate sentence for a juvenile adjudicated a delinquent for spray painting or "tagging" a wall, an act

---

1. A delinquent act is a violation of any statute, any ordinance, or certain enumerated orders.

§ 19–1–103(36), C.R.S. (2013).

that constitutes criminal mischief, is requiring that the juvenile repaint the wall and write a letter of apology.

## II. Characterization of Juvenile Delinquents: Special Offenders

¶ 50 While the courts have broad discretion when dealing with juvenile offenders in most situations, the General Assembly recognized that in some instances, when a juvenile's behavior is severe enough, it was necessary to narrow the court's discretion. Hence, the General Assembly created the category, "special offenders," which identifies juveniles who have acted in such a way that, in order to ensure the appropriate balance between the best interest of the juvenile and protecting the public, the General Assembly restricted the court's sentencing discretion. §§ 19–2–516, –908, C.R.S. (2013).

¶ 51 Within the category of special offenders, there are four subcategories of increasing severity. § 19–2–516. The categories only apply in situations where a juvenile has been adjudicated either of multiple offenses or a particularly serious offense. Each subcategory is defined based on a juvenile's prior adjudications and the severity of subsequent delinquent acts. *Id.*

### 1. Mandatory Sentence Offender

¶ 52 "Mandatory sentence offender" is the least serious category of special offender. § 19–2–516(1). To be adjudicated a mandatory sentence offender, a juvenile must be adjudicated a delinquent on two separate occasions. *Id.* In other words, the juvenile must have shown repeated delinquent behavior.

### 2. Repeat Juvenile Offender

¶ 53 One step more serious than mandatory sentence offender is "repeat juvenile offender." § 19–2–516(2). A repeat juvenile offender is a juvenile who has been previously adjudicated delinquent and is subsequently either adjudicated delinquent or has his or her probation revoked for an act that constitutes a felony. *Id.* The repeat juvenile offender has not only shown repeated delinquent behavior, but that subsequent behavior

is so serious that it would be a felony if committed by an adult.

### 3. Violent Juvenile Offender

¶ 54 The third type of special offender is a "violent juvenile offender." § 19–2–516(3). A juvenile may be adjudicated a violent juvenile offender for an act that constitutes a crime of violence, as defined under section 18–1.3–406(2), C.R.S. (2013). *Id.* This classification is reserved for juveniles who commit an act which would be a felony if committed by an adult and either use a deadly weapon or cause serious bodily injury or death during the act. An example of a violent juvenile offender is a juvenile who commits an aggravated robbery of a convenience store with a gun.

### 4. Aggravated Juvenile Offender

¶ 55 Finally, the most serious category of special offender is an "aggravated juvenile offender." § 19–2–516(4). This designation is reserved for the most serious offenses and it operates as the last chance for a juvenile to participate in the rehabilitative juvenile system rather than being tried as an adult under either the direct file or transfer statute. A juvenile may be adjudicated an aggravated juvenile offender in three instances. First, a juvenile may be adjudicated an aggravated juvenile offender if he or she is either adjudicated a juvenile delinquent or has probation revoked for an act that constitutes a class 1 or class 2 felony. § 19–2–516(4)(a)(I). This category applies to a juvenile who commits an act such as murder or kidnapping with a sexual assault. Second, a juvenile may be adjudicated an aggravated juvenile offender if he or she is adjudicated a juvenile delinquent for an act that constitutes a felony and is subsequently either adjudicated a juvenile delinquent or has probation revoked for an act that constitutes a crime of violence, as defined by section 18–1.3–406(2). § 19–2–516(4)(a)(II). Again, the subsequent crime of violence must be a felony that is committed with a deadly weapon or that results in serious bodily injury or death. Finally, third, a juvenile may be adjudicated an aggravated juvenile offender if he or she is adjudicated a juvenile delinquent or has probation revoked

for an act that constitutes incest, aggravated incest, felonious sexual assault, unlawful sexual contact using force, or sexual assault on a child.[2] § 19–2–516(4)(a)(III).

¶ 56 The severity of an adjudication as an aggravated juvenile offender is not only apparent in the description of the acts that constitute an aggravated juvenile offense, but also in the fact that the General Assembly created significant procedural safeguards that must be followed before a juvenile may be adjudicated an aggravated juvenile offender. § 19–2–601, C.R.S. (2013). Illustrative of the difference between the way the General Assembly views aggravated juvenile offenders and other juvenile delinquents, including other juveniles who fall into the other special offender classifications, is that in an action alleging that a juvenile is an aggravated juvenile offender, the alleged offender has a right to a jury of twelve people. § 19–2–601(3)(a). By contrast, most other juvenile proceedings are intended to be informal and there is generally no right to a jury trial.[3] *A.C., IV v. People,* 16 P.3d 240, 244–45 (Colo. 2001). Additionally, the prosecutor must plead that the juvenile is an aggravated juvenile offender as a separate count and the jury must find beyond a reasonable doubt that the juvenile meets the criteria for an aggravated juvenile offender classification. § 19–2–601(1)(a); *see People in re D.G.P.,* 194 Colo. 238, 242, 570 P.2d 1293, 1295 (1977) ("Material elements of the offenses alleged in a delinquency petition must be proved beyond a reasonable doubt.").

¶ 57 The additional procedural safeguards for juveniles alleged to be aggravated juvenile offenders not only serve to distinguish aggravated juvenile offenders as the most serious classification for a juvenile delinquent, but are also necessary because the

sentences for an aggravated juvenile offender are much more severe than the sentences for a juvenile adjudicated of a less serious offense.

**III. Sentencing Juvenile Delinquents**

¶ 58 Once a juvenile is adjudicated a delinquent, the court must next determine an appropriate sentence. The Children's Code is structured so that more severe patterns of behavior are met with more significant intervention in order to simultaneously protect community safety and rehabilitate the juvenile. At the most basic level, for the majority of juveniles adjudicated delinquents, the court has discretion to craft a sentence that will accomplish the Children's Code's dual goals of serving the interests of both the community and the juvenile. *See* § 19–2–907 (listing twelve sentencing options available to courts, ranging from commitment to the department of human services to participation in a restorative justice program). However, the code restricts a court's discretion and provides more detailed direction for a court sentencing a juvenile adjudicated a special offender. § 19–2–908.

¶ 59 For the two least serious categories of special offenders, mandatory sentence offenders and repeat offenders, the minimum sentence must include an out of the home sentence for at least one year unless the court finds that a different sentence would better strike the necessary balance between protecting the public and serving the best interest of the juvenile:

> The court shall place or commit . . . [the juvenile] out of the home for not less than one year, unless the court finds that an alternative sentence or a commitment of less than one year out of the home would be more appropriate. . . .[4]

2. In this case, the state charged A.S. with eleven counts: four counts of sexual assault on a child, four counts of sexual assault on a child as a pattern of abuse, two counts of aggravated incest, and classification as an aggravated juvenile offender. In a plea deal, A.S. entered a guilty plea to one count of sexual assault on a child and aggravated juvenile offender status.

3. While there is generally no right to a jury trial in juvenile court, a court in its discretion may order a jury trial if the juvenile is charged with having committed an act that would constitute a

felony if committed by an adult. § 19–2–107, C.R.S. (2013). Further, in an action where a juvenile is charged with having committed a delinquent act that would be a crime of violence if committed by an adult, either the juvenile or the district attorney may demand a trial by a jury of not more than six people. *Id.*

4. The out of home placement can only be accomplished by either committing the juvenile to the department of human services or placing the juvenile in a residential facility operated or li-

§ 19–2–908(1)(a), (b). For these two categories, the General Assembly directs that the juvenile be removed from the home but also specifically tells the court that it has discretion to craft a different sentence if it finds that a different sentence would be more appropriate. Therefore, by its plain language, the statute does not prohibit a sentence to probation and it gives the court discretion to not remove the juvenile from the home if appropriate.

¶ 60 The third category of special offender, in order of increasing severity, is violent juvenile offender, and accordingly, the sentencing directions applicable to this category provide a court with less discretion than the directions for the two less serious categories of special offenders. In fact, unlike with mandatory sentence offenders and repeat offenders where, regardless of the juvenile's age, the court has discretion to not place the juvenile out of the home if an alternative sentence "would be more appropriate," a court sentencing a violent juvenile offender may only exercise that discretion in the limited situation where the offender is between the ages of ten and twelve:

> [T]he juvenile shall be placed or committed out of the home for not less than one year except that this sub-subparagraph (A) shall not apply to a juvenile who is ten years of age or older, but less than twelve years of age, when the court finds that an alternative sentence or a commitment of less than one year out of the home would be more appropriate.

§ 19–2–908(1)(c)(I)(A). If the violent juvenile offender is not between the ages of ten and twelve, the court's only option is to impose a sentence that places the juvenile in a facility or center licensed by the department of human services for at least one year.

¶ 61 While the Children's Code prescribes certain limited circumstances in which a court may craft an alternate sentence for any of the three least serious categories of special offender, the Children's Code contains no such grant of discretion to craft an alternative sentence in the sentencing directions applicable to aggravated juvenile offenders. Rather, the aggravated juvenile offender sentencing directions require a commitment to the department of human services and only permit the court to exercise discretion in determining the length of that commitment:

> (A) For an offense other than an offense that would constitute a class 1 or 2 felony if committed by an adult, the court may commit the juvenile to the department of human services for a determinate period of up to five years;

> (B) For an offense that would constitute a class 2 felony if committed by an adult, the court shall commit the juvenile to the department of human services for a determinate period of at least three but not more than five years;

> (C) For an offense that would constitute a class 1 felony if committed by an adult, the court shall commit the juvenile to the department of human services for a determinate period of at least three but not more than seven years . . . .

§ 19–2–601(5)(a)(I)(A) to (C). The lack of a grant of discretion to craft an alternative sentence in the aggravated juvenile offender statute stands in stark contrast to the explicit grants of limited discretion contained in the other special offender sentencing provisions. Because the sentencing directions for each of the three less serious categories of special offenders contain an explicit grant of discretion, the absence of comparable language in the aggravated juvenile offender statute must be interpreted to mean that the court has no discretion to craft an alternative sentence for juveniles adjudicated of the most serious category of offense in the juvenile system.[5] Hence, to be a consistent and

censed by the department of human services. § 19–1–103(85).

**5.** Where the intent of the General Assembly is unclear from the language of the statute alone, we read the statute *in pari materia*, meaning in conjunction with the other related provisions, to determine the General Assembly's intent. *Mar-* *tinez v. People*, 69 P.3d 1029, 1031 (Colo.2003); *R.E.N. v. City of Colorado Springs*, 823 P.2d 1359, 1364 n. 5 (Colo.1992) ("The children's code must be construed *in pari materia* in order to effectuate legislative intent."). We construe a statute *in pari materia* to "give consistent, harmonious and sensible effect to all its parts." *R.E.N.*, 823 P.2d at 1364 n. 5 (quoting *Walgreen*

harmonious part of the Children's Code, subsection A of the sentencing directions must be read to mandate that a court impose a sentence of a determinate period of time up to five years and to preclude a court from either imposing an alternate sentence, such as probation, or suspending the sentence. *See People v. Hummel,* 131 P.3d 1204, 1207–08 (Colo.App.2006) (if a defendant is sentenced under a mandatory sentencing provision, the district court has no authority to suspend the sentence).

¶ 62 Rather than interpreting the aggravated juvenile offender sentencing directions by reading the Children's Code as a single statutory scheme, the majority reaches its conclusion that a court has complete discretion under subsection A to craft an alternative sentence by ignoring the overall structure of the Children's Code. Instead, the majority elects to rely heavily on the aggravated juvenile offender sentencing section and historical changes to the Children's Code to conclude that a court has complete discretion under subsection A to craft an alternative sentence because the section says that the court "may commit the juvenile to the department of human services for a determinate period of up to five years." Maj. op. ¶¶ 28–31. However, this interpretation is untenable because it overlooks the structure and patterns in the Children's Code as it currently exists and it creates incongruences within the Children's Code. Specifically, under the majority's construction, if a juvenile is over age twelve, a court has more discretion when sentencing the more serious aggravated juvenile offender under subsection A than when sentencing the less serious violent juvenile offender. §§ 19–2–516, – 601(5)(a)(I)(A), –908(1)(c)(I)(A). Furthermore, given that the special offender sentencing directions for the three least serious categories of special offenders—mandatory sentence offender, repeat offender, and violent juvenile offender—all impose limits on the court's discretion, it is improbable that the General Assembly intended to grant the sentencing court unfettered discretion when sentencing an aggravated juvenile offender

under subsection A. §§ 19–2–516, – 908(1)(a), –908(1)(b).

¶ 63 In addition to relying heavily on history, the majority also supports its interpretation by placing undue weight on the General Assembly's use of "may" in subsection A ("the court may commit the juvenile to the department of human services for a determinate period of up to five years") and "shall" in subsections B ("the court shall commit the juvenile to the department of human services for a determinate period of at least three but not more than five years") and C ("the court shall commit the juvenile to the department of human services for a determinate period of at least three but not more than seven years") of the aggravated juvenile offender sentencing directions. The majority concludes that reading subsection A to require a mandatory sentence of commitment to the department of human services for a juvenile adjudicated an aggravated juvenile offender treats the term "may" as "shall." Maj. op. ¶ 29. However, this argument unnecessarily discounts the logical interpretation that the term "shall" is used in subsections B and C because there is both a lower and upper limit to the sentence. By comparison, "may" is used in subsection A because there is no lower bound. Interpreting "may" as pertaining to the length of the commitment, rather than the type of sentence, is consistent with both the commonly accepted meaning of the term and the rest of the code.

## IV. Probationary Sentence Prohibited by Statute

¶ 64 Reading subsection A of the aggravated juvenile offender sentencing directions to require commitment to the department of human services for a determinate period of time and precluding the court from imposing an alternate sentence, such as probation, not only is consistent with the sentencing directions for the other categories of special offenders, but is also supported by the language of the sections defining the sentencing options generally available to a court for juvenile offenders, §§ 19–2–907 through 19–2–917, C.R.S. (2013). The section of the Children's Code which details what a proba-

*Co. v. Charnes,* 819 P.2d 1039, 1043 (Colo.1991)

(internal quotation omitted)).

tion sentence looks like in the juvenile system begins with the phrase, "Except as otherwise provided in section 19–2–601 for an aggravated juvenile offender ...."[6] § 19–2–913. This opening phrase, which limits when a court may sentence a juvenile to probation, does not say "except as otherwise provided in sections 601(5)(a)(I)(B) and 601(5)(a)(I)(C)," but rather refers to the section as a whole. Thus, the most straightforward interpretation of this provision is that, although generally the court has significant discretion in crafting an appropriate sentence, the General Assembly intended to curtail that discretion by excluding all juveniles adjudicated as aggravated juvenile offenders from being eligible for a sentence of probation.

## V. Application

¶ 65 The facts of this case illustrate why the inconsistencies created by the majority's interpretation make such a construction unreasonable. In this case, the relevant facts are that A.S., who was over the age of twelve at all times relevant to this case, pled guilty to one count of sexual assault on a child, a class 4 felony if committed by an adult, and adjudication as an aggravated juvenile offender. Because he was adjudicated of an act that would be a class 4 felony if committed by an adult, he was sentenced under subsection A of the aggravated juvenile offender sentencing directions.

¶ 66 Under the majority's interpretation of the statute, a court would have unfettered discretion to sentence A.S. to probation, suspend a sentence, or impose any other sentence which it deems appropriate. The court would not even have any obligation to place the juvenile out of the home for a period of time. This leads to the perplexing situation where A.S. would have been in a worse position if he were adjudicated a violent juvenile offender, a less serious classification, than if he were adjudicated an aggravated juvenile offender, the most serious classification, because as an adjudicated violent juvenile of-

fender, A.S. would have to be, at the very least, placed out of the home for one year.

¶ 67 By contrast, as I construe the statute, the court must sentence A.S. to commitment to the department of human services for a determinate period of up to five years and the juvenile who is adjudicated as the less serious violent juvenile offender would not be in a worse position. Therefore, I would find that A.S. is not eligible for either a sentence that does not include a commitment to the department of human services or a suspended sentence.

¶ 68 For the foregoing reasons, I respectfully disagree with the majority's interpretation. Because I would affirm the court of appeals' decision holding that the magistrate does not have discretion to sentence a juvenile adjudicated an aggravated juvenile offender to probation, I respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.

---

6. Each section providing details about the sentencing options generally available to the court, sections 19–2–909 through 19–2–917, with the exception of section 19–2–909, begins with the same phrase. Section 19–2–909 begins: "Except

as otherwise provided in section 19–2–601 and 19–2–921 for an aggravated juvenile offender...." Because only a probation sentence is at issue in this case, my analysis focuses specifically on section 19–2–913.