**The PEOPLE of the State of Colorado, Petitioner,**

v.

**J.J.H., a Child, Respondent.**

**No. 99SC447.**

Supreme Court of Colorado, En Banc.

Feb. 5, 2001.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, CO, Attorneys for Petitioner.

David Kaplan, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, CO, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

In this case, we address the sentencing requirements applicable to a juvenile charged as a mandatory sentence offender. The ju-

venile argued, and the court of appeals agreed in *People v. J.J.H.*, 992 P.2d 626 (Colo.App.1999), that the court should have required the prosecutor to prove any previous delinquency adjudications to the court beyond a reasonable doubt as a predicate to determining that J.J.H. should be sentenced as a mandatory sentence offender. We disagree. The Colorado Children's Code governs, and it requires additional procedures only in the case of an alleged aggravated juvenile offender. Because this is an area of legislative discretion, and because the General Assembly has identified the goals of juvenile proceedings to include informality, we defer to the statutory mandate.

## I.

The trial court adjudicated the juvenile J.J.H. delinquent on the basis of two burglary counts and one theft count. The delinquency petition alleged that J.J.H.'s two previous adjudications as a delinquent mandated that he be subject to sentencing as a "mandatory sentence offender" pursuant to sections 19–2–516, 6 C.R.S. (2000), and 19–2–908(1)(a), 6 C.R.S. (2000). Moreover, because at the time of the burglaries, J.J.H. was on probation for one of his prior delinquency adjudications, the State filed a separate probation revocation complaint against J.J.H. for the commission of the new offenses. At the sentencing hearing, the trial court determined that J.J.H. was a mandatory sentence offender pursuant to section 19–2–516(1). Applying the sentence provisions in section 19–2–908, the trial court sentenced J.J.H. to two years in a community corrections facility and ordered that he make restitution to his victims.

The court of appeals affirmed J.J.H.'s adjudication as a delinquent but reversed his sentencing as a mandatory sentence offender. *J.J.H.*, 992 P.2d at 629. The court of appeals found that proper adjudication of a juvenile as a mandatory sentence offender requires a separate proceeding in which the prosecutor must plead and prove any previous delinquency adjudications beyond a reasonable doubt to the trier of fact. *Id.* at 628. The court of appeals compared the mandatory sentence offender provisions of the Colorado Children's Code to those governing the procedures for sentencing adults as habitual criminals and imposed the same procedural requirements for juveniles as are required for adults. *Id.* at 628–29.

We reverse the court of appeals' imposition of this additional procedure in sentencing juveniles as mandatory sentence offenders. We hold that the trial court did not err when it found J.J.H. to be a mandatory sentence offender at the sentencing hearing and sentenced him accordingly.

## II.

The Colorado Children's Code gives sentencing courts a number of choices in sentencing juveniles including commitment to the Department of Human Services, confinement in a county jail or community corrections center, detention, probation and payment of fines and restitution. *See* § 19–2–907(1), 6 C.R.S. (2000).

The General Assembly differentiates between the types of juvenile offenders and subjects "special offenders" to a specific sentencing scheme that creates four categories of special offenders. § 19–2–908. First, a "mandatory sentence offender" is a juvenile twice adjudicated delinquent who is either (1) adjudicated delinquent for a new act; or (2) revoked from probation for another delinquent act. § 19–2–516(1). Second, a "repeat juvenile offender" is a juvenile previously adjudicated delinquent, who is either (1) adjudicated delinquent for a new act constituting a felony; or (2) is revoked from probation for a delinquent act constituting a felony. § 19–2–516(2). Third, a "violent juvenile offender" is a juvenile adjudicated delinquent for an act that constitutes a crime of violence defined in section 16–11–309(2), 6 C.R.S. (2000). § 19–2–516(3).

Finally, an "aggravated juvenile offender" is a juvenile: (1) adjudicated delinquent or revoked from probation for an act that constitutes a class 1 or class 2 felony; (2) adjudicated delinquent for an act constituting a felony and subsequently adjudicated delinquent or revoked from probation for committing a violent crime; or (3) adjudicated a delinquent or revoked from probation for

having committed a sexual assault. § 19–2–516(4).

The General Assembly sets forth separate sentencing, placement, and treatment options for each type of juvenile offender. A court sentences mandatory sentence offenders, repeat juvenile offenders, and violent juvenile offenders in accordance with section 19–2–908.[1] A court sentences aggravated juvenile offenders in accordance with the provisions of section 19–2–601, 6 C.R.S. (2000).

Section 19–2–601 mandates separate procedural rules for the sentencing of aggravated juvenile offenders. First, the statute requires an independent allegation that the juvenile is an aggravated juvenile offender. That petition must allege in separate counts the circumstances surrounding the juvenile's prior adjudications including the date of the adjudication and the nature of the prior charges. § 19–2–601(1)(a), (b). Second, the court must advise the juvenile of the "effect and consequences" of the allegation and require the juvenile to admit or deny the previous adjudications or probation revocations alleged in the petition. § 19–2–601(2)(a), (b). If the juvenile denies a prior adjudication or probation revocation, after making a guilty finding in the acts alleged in the latest petition, the court must conduct a separate hearing in which it determines whether or not the juvenile "suffered such adjudications or probation revocations." § 19–2–601(4)(b). Each count alleging a prior revocation or adjudication shall be proved to the court beyond a reasonable doubt. *Id.* Finally, a juvenile charged as an aggravated offender may request and receive adjudication by a jury. § 19–2–601(3).

The court of appeals held that before a court may sentence a juvenile under section 19–2–908, the court must first adjudicate that juvenile a special offender. The court of appeals further held that the adjudication of a juvenile as a special offender required the

prosecutor to plead and prove any previous adjudications beyond a reasonable doubt to the trier of fact. The court of appeals' decision mandated that the trial court conduct a separate adjudicative procedure to determine whether J.J.H. was a mandatory sentence offender before sentencing him under section 19–2–601. We reject the analysis set forth by the court of appeals for several reasons.

### A.

First, we must turn to and rely upon the plain language of the applicable statute. An appellate court interpreting statutory provisions must attempt to effectuate the intent of the legislature. *People v. McCullough,* 6 P.3d 774, 778 (Colo.2000). The plain language of the statute is the best indication of legislative intent, and clear and unambiguous language eliminates the need to resort to other principles of statutory construction such as legislative history or external circumstances at the time the statute was enacted. *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo. 2000). Courts should not presume that the legislature used language "idly and with no intent that meaning should be given to its language." *McMillin v. State,* 158 Colo. 183, 188, 405 P.2d 672, 674 (1965). The General Assembly only specified additional procedures for sentencing a juvenile as an aggravated offender. It obviously did not intend such procedures to be applied to mandatory sentence, repeat juvenile or violent juvenile offenders.

The court of appeals concluded that the cumulative application of a number of different statutes meant that the enhanced procedures should apply to all mandatory sentence offenders. Specifically, the court of appeals noted that section 19–2–516(1)(a)(I) defines a mandatory sentence offender as a juvenile who "has been adjudicated a juvenile delinquent twice." "Adjudication" is defined in

---

1. A court shall place or commit a mandatory sentence offender and a repeat juvenile offender out of the home for at least a year, unless a lesser time would be appropriate. If the juvenile is eighteen years of age at the time of sentencing, the court may sentence the juvenile to county jail or a community corrections facility. Upon a showing of exemplary behavior to the commit-

ting judge the juvenile may be released. § 19–2–908(1)(a)(II), (b)(II). Violent juvenile offenders are subject to the same sentencing parameters. § 19–2–908(1)(c)(I)(a). A court may also commit a violent juvenile offender to the Department of Human Services and order that juvenile to a residential program. § 19–2–108(1)(c)(II).

section 19–1–103(2), 6 C.R.S. (2000), as follows:

> "Adjudication" means a determination by the court that it had been proven beyond a reasonable doubt to the trier of fact that the juvenile has committed a delinquent act or that a juvenile has pled guilty to committing a delinquent act. In addition, when a previous conviction must be pled and proven as an element of an offense or for purposes of sentence enhancement, "adjudication" means conviction.

The court of appeals read those statutes to provide that a juvenile must be separately adjudicated as a mandatory sentence offender and that such adjudication itself requires the prosecutor to "plead and prove the previous adjudications beyond a reasonable doubt to the trier of fact." *J.J.H.*, 992 P.2d at 628.

We do not read the statute in that way. We view the plain language of the definition as requiring either proof of a delinquent act beyond a reasonable doubt or a plea of guilty before an "adjudication" of delinquency can enter. By discussing the requirements necessary for entry of an initial formal adjudication, we do not read the statute as imposing those same requirements every time the adjudication itself is tendered for sentence enhancement. Further, we view the precise statutes identifying the procedures applicable to the different classes of offenders to control over the general statutes defining adjudication. *See Delta Sales Yard v. Patten*, 892 P.2d 297, 298 (Colo.1995) (holding that "[i]t is a well-accepted principle of statutory construction that in the case of conflict, a more specific statute controls over a more general one").

The plain language of the statute does *not* require extra procedural requirements for enhanced sentencing of mandatory sentence offenders. Only in sentencing an aggravated offender must the State prove contested adjudications or probation revocations beyond a reasonable doubt.[2] § 19–2–601(4)(b). We defer to that plain language.

## B.

Second, in drawing support for its statutory construction from the adult habitual criminal sentencing provisions, the court of appeals' ruling disregards the differences between the prosecution of juveniles and adults. The stated goals of the juvenile justice system are "to secure for each child subject to these provisions such care and guidance . . . as will best serve his welfare and the interests of society." § 19–1–102(1)(a), 6 C.R.S. (2000). The Children's Code seeks to provide informal, simple and speedy judicial procedures. *People v. T.M.*, 742 P.2d 905, 907 (Colo.1987). One of the fundamental differences between the juvenile system of justice and an adult criminal prosecution "is the overriding goal of the Children's Code to provide guidance and rehabilitation of an adjudicated delinquent child in a manner consistent with the best interest of the child and the protection of society rather than fixing criminal responsibility, guilt, and punishment." *S.G.W. v. People*, 752 P.2d 86, 91 (Colo.1988).

The juvenile system seeks to avoid imposing mechanistic or formal procedures on juveniles' adjudications. *T.M.*, 742 P.2d at 911. "Informal and personal attention may also serve better to rehabilitate and deter children than the adult system." *Id.* The legislature specifically permits juvenile hearings to be conducted in "an informal manner." § 19–1–106(2), 6 C.R.S. (2000). Colorado courts and the General Assembly prefer informal procedures when adjudicating most types of juvenile offenders. *See A.C. v. People*, 16 P.3d 240 (Colo.2001) (refusing to mandate a jury trial for a juvenile where the statute does not require a jury trial given the offenses with which the juvenile is charged, even if an adult similarly charged would be entitled to a jury trial). For these reasons we do not find the comparison to adult habitual criminal prosecutions to be a persuasive interpretation of the procedures for sentenc-

---

2. It would be arguable that, were we to adopt the court of appeals' reasoning, proof beyond a reasonable doubt would be required for contested adjudications because of the statutory definition of adjudication, but not for contested probation revocations. Since both operate to enhance sentencing, the distinction blurs.

ing mandatory sentence offenders pursuant to the Children's Code.

Neither the language of the juvenile sentencing statute nor the stated goals of the Colorado Children's Code support the court of appeals' reliance on the statutory provisions addressing punishment for adult habitual criminals in sentencing juvenile mandatory offenders. *See* § 16–13–101, 6 C.R.S. (2000) (setting forth the classification of and punishment for habitual criminals). For example, section 16–13–101(1.5), provides that an adult convicted of a felony, with two prior separate felony convictions from different criminal episodes within ten years of the commission of the most recent offense shall be adjudged an habitual criminal. Adult habitual offenders are subject to mandatory sentences that can be life-long. *See* § 16–13–101. An habitual criminal is punishable by life imprisonment under certain circumstances or by confinement in a correctional facility for three times the maximum of the presumptive range for the class of felony committed in other circumstances. § 16–13–101(1), (1.5). Sections 16–13–101(1) and (1.5) require that the trial court must adjudge a defendant as an habitual criminal before the court can impose an enhanced sentence, but once that occurs, the trial court has little discretion about imposition of the enhanced sentence. The gravity of the consequences attendant upon conviction as an habitual offender themselves suggest a need for proof beyond a reasonable doubt that the defendant properly falls within the classification.

To the contrary, the sentencing judge in a juvenile adjudication is not compelled to impose a severe sentence and may even release a mandatory or repeat juvenile offender from commitment before the sentence has been fulfilled based on the juvenile's showing of exemplary behavior. § 19–2–908(1)(a)(II), (b)(II). The committing court may also approve a violent juvenile offender's release

from commitment to the Department of Human Services before that offender serves the minimum sentence. § 19–2–908(1)(c)(II).

The sentencing schemes for juvenile special offenders differ greatly from those sentences imposed on adult habitual offenders. Juveniles adjudicated as mandatory, repeat or violent offenders may be committed to a facility for a period not to exceed two years.[3] § 19–2–908(1)(a), (b), (c). Even juveniles adjudicated aggravated offenders only face a commitment of up to seven years, some portion of which may be served in the Department of Corrections. § 19–2–601(5). Adult habitual criminals can face a sentence of life imprisonment. § 16–13–101(1)(a). The goal of the juvenile system is to remain informal, flexible and focused on rehabilitation of the young person, whereas, the adult system necessarily hardens in its approach to criminals—in procedures, goals and penalties.

### III.

In conclusion, we find no reason to overturn the General Assembly's specific direction regarding the procedures applicable to J.J.H.[4] Since the trial court complied with these procedures, we reverse the court of appeals and remand this case with directions to reinstate the trial court's adjudication and sentence.

---

**3.** If the offender is eighteen years of age or older at the time of the sentencing hearing but was adjudicated a special offender for acts committed before the juvenile's eighteenth birthday, the court may sentence the offender to the county jail or to a community correctional facility or program for no more than two years. § 19–2–908(a), (b), (c).

**4.** Because we conclude that the trial court complied with the appropriate procedure for sentencing J.J.H. as a mandatory sentence offender, we need not reach J.J.H.'s argument that the prohibition against double jeopardy prevents the prosecution from seeking to adjudicate and sentence him as a mandatory sentence offender on remand.