Carolyn A. **WILBER, individually and as proposed class representative on behalf of all others similarly situated, Petitioner–Appellant,**

v.

The **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LA PLATA, Colorado, Respondent–Appellee,**

and

**Colorado State Board of Assessment Appeals, Appellee.**

No. 00CA1038.

Colorado Court of Appeals, Div. V.

Aug. 16, 2001.

Certiorari Denied Feb. 25, 2002.

Abadie & Zimsky, LLC, William E. Zimsky, Durango, CO, for Petitioner–Appellant.

Ballard Spahr Andrews & Ingersoll, LLP, Denise S. Maes, Denver, CO; Goldman, Robbins & Rogers, LLP, Jeffery P. Robbins, Durango, CO, for Respondent–Appellee.

Ken Salazar, Attorney General, Mark W. Gerganoff, Assistant Attorney General, Denver, CO, for Appellee.

Opinion by Judge ROY.

Plaintiff, Carolyn A. Wilber (taxpayer), appeals from an order of the Board of Assessment Appeals (BAA) denying her petition for abatement or refund of real property taxes together with other relief and affirming the decision of the Board of County Commissioners of La Plata County, Colorado (county). Taxpayer contends that the county violated § 29–1–301, C.R.S.2000, during the 1996–98 property tax years. Because we agree with the BAA that the ballot measures adopted by the voters of La Plata County superseded the limitations of § 29–1–301, we affirm.

This appeal concerns the impact of two voter-approved ballot measures on the county's property tax mill levy. The ballot measures adopted by the voters in 1994 and 1997 state:

Shall La Plata County, Colorado, *without increasing its property tax mill levy ... be authorized to collect, retain and spend or reserve all revenues from its existing ... property tax ...* for the purpose of funding capital projects, road and bridge maintenance, public safety, human services, and other county services; provided that the county's property tax mill levy and sales tax rates shall not be increased without further voter approval; *and shall the county be entitled to collect and spend or reserve the full revenues from such revenue increase without any other condition or limitation, and without limiting*

*the collection or spending [of] any other revenues by the county under Article X, Section 20, to the Colorado Constitution or any other law?* (emphasis added)

The parties have stipulated that the county's mill levy in each year, from 1992 through 1999, was 8.5 mills. Taxpayer does not challenge the validity of the pre–1994 imposition of the 8.5 mill levy.

As relevant here, § 29–1–301(1)(a), C.R.S. 2000, places a 5.5% limit on tax levy increases:

All statutory tax levies for collection in 1989 and thereafter when applied to the total valuation for assessment of ... each of the counties ... shall be so reduced as to prohibit the levying of a greater amount of revenue than was levied in the preceding year plus five and one-half percent
. . . .

Section 29–1–302(2)(b), C.R.S.2000, provides an exception to that tax levy limit:

Any taxing entity to which section 29–1–301(1) applies may, at its discretion, submit the question of an increased levy directly to an election of the qualified electors without first submitting the question of an increased levy to the division of local government.

The mill levy is determined by dividing the projected revenue by the total assessed value of taxable property and multiplying the dividend by 1000. Section 39–1–121, C.R.S.2000. If the assessed value increases and revenue remains constant, the mill levy would necessarily decrease. However, if revenue increases by a greater percentage than does the assessed value, the mill levy would increase. Any increase in the mill levy requires voter approval. Colo. Const. art. X, § 20(4)(a).

Thus, for example, if in year one the taxable properties in a county had an assessed value of $750,000,000 and authorized revenue of $5,000,000, the mill levy would be 6.66 mills. Then, if in year two, the assessed value had remained $750,000,000, and if the county determined to increase revenue by 5.5%, the maximum allowable under § 29–1–301(1)(a), revenue would increase to

$5,275,000, and the mill levy would increase to 7.033.

It is undisputed that if § 29–1–301(1)(a) had been applied to limit revenues, the county's mill levy for the years 1996–98 would have been less than 8.5 mills, notwithstanding fluctuations in the total assessed value. For 1996, the mill levy would have been 6.682 with revenues of $5,025,547, but $6,392,885 was collected. For 1997, the mill levy would have been 8.162 mills with revenues of $5,764,148, but $6,331,294 was collected. For 1998, the mill levy would have been 6.741 mills with revenues of $6,189,374, but $7,773,414 was collected. Thus, if taxpayer is correct, the county collected a total of $3,518,524 in excess revenues for the subject years.

In January 1999, taxpayer filed a petition for abatement or refund of taxes with the county on behalf of herself and other similarly situated property owners. In the petition, taxpayer alleged that the ballot measures did not supersede the mill levy limitations of § 29–1–301(1)(a) for the 1996–98 property tax years. The county denied the petition, and the BAA denied taxpayer's subsequent appeal.

■ On appeal to this court, taxpayer takes the position that because § 29–1–301(1)(a) concerns itself with both the mill levy and revenues, and the ballot measures state that the mill levy will not be increased, the use of a mill levy rate greater than that permitted by the statute was not authorized by the ballot measures. It is taxpayer's position that the statement in the ballot measures that the mill levy rate would not be increased means that the levy cannot be increased over that authorized by § 29–1–301(1)(a), rather than over the then-existing rate. We disagree.

As the county found in its order, taxpayer's position is premised on two faulty assumptions: (1) that § 29–1–301(1)(a) places a limitation on both the mill levy rate and the revenues; and (2) that when revenues increase at a rate in excess of the 5.5% limit imposed by § 29–1–301(1)(a), this excess revenue is necessarily due to an increase in the mill levy.

Rather, § 29–1–301(1)(a) directly regulates or limits revenue. Because the mill levy is derived from total assessed value and revenue, the statute only indirectly, or secondarily, regulates the mill levy.

The county's growth in spending is limited to its annual local population growth plus the rate of inflation in the prior year, and any excess revenues must be refunded to the taxpayers unless the voters approve their retention by the county. The ballot measures permit the county to keep, for limited purposes, revenues in excess of spending derived from some or all of its revenue sources, including the property tax. *See* Colo. Const. art. X, § 20(7).

Any increase in the mill levy over that imposed in the prior year requires voter approval. Colo. Const. art. X, § 20(4)(a). Therefore, if the mill levy derived from the total assessed value and the authorized revenues pursuant to § 29–1–301(1)(a) decreases, it cannot later be increased to its former level without voter approval. *See* Colo. Const. art. X, § 20.

Thus, both the county's spending and revenues are restricted. Increases in its property tax revenues are limited by § 29–1–301(1)(a), and that limit can be superseded only with the approval of the voters pursuant to § 29–1–302(2)(b). Growth in the county's spending is limited by Article X, Section 20, of the Colorado Constitution, absent voter approval of a greater rate of growth.

The ballot measures were principally designed to relieve the county of the restrictions imposed by Article X, Section 20, of the Colorado Constitution. Clearly, the ballot measures permitted the county to retain excess revenues and to spend in excess of the spending limitations for the purposes described in the ballot measures.

Taxpayer argues that the ballot measures did not supersede the limitations of § 29–1–301(1)(a) because that statute was not specifically mentioned and because the ballot measures did not comply with the requirements of § 29–1–302(2)(b). However, the taxpayer does not point to any requirement that the ballot measures explicitly refer to the statute, nor does the taxpayer point to any other

requirement of § 29–1–302(2)(b) with which the county did not comply in submitting the ballot measures to the voters.

The ballot measures indicate, by use of the phrases "without increasing its property tax mill levy" and "existing ... property tax," that the existing mill levy will be retained during the period covered, and as the BAA concluded, the exemption from "any other law" was sufficient to exempt the county from § 29–1–301(1)(a).

[2] Thus, we conclude that the ballot measures are not ambiguous and that they clearly superseded the limitations of § 29–1–301(1). Having concluded there is no ambiguity, we need not analyze the legislative history of the ballot measures. *Cf. People v. J.J.H.*, 17 P.3d 159 (Colo.2001). Additionally, we need not address taxpayer's related argument concerning classwide relief.

Order affirmed.

Judge ROTHENBERG and Judge TAUBMAN concur.