The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 22, 2018

**2018COA22**

**No. 16CA1446, People In Interest of J.C. — Juvenile Court —
Delinquency — Sentencing — Special Offenders — Mandatory
Sentence Offender — Repeat Juvenile Offender**

A division of the court of appeals considers the scope of a

juvenile court's sentencing authority pursuant to the Children's

Code, and concludes that a juvenile's sentence to an indeterminate

one-to-two-year term of commitment in the custody of the Division

of Youth Corrections (DYC), with a mandatory minimum term of one

year, is illegal for two reasons.

First, the division holds that nothing in the juvenile sentencing

statutes authorizes an indeterminate sentence to commitment to

the DYC, and that any such sentence must be determinate.

Second, the division concludes that a mandatory minimum

sentence to DYC commitment is authorized only if the juvenile

qualifies as a special offender under section 19-2-908, C.R.S. 2017. In deciding this second issue, the division holds that a juvenile doesn't qualify as a mandatory sentence offender pursuant to section 19-2-516(1), C.R.S. 2017, or a repeat juvenile offender pursuant to section 19-2-516(2), when, as in this case, the multiple adjudications required by those provisions occurred in the same hearing.

Accordingly, the division vacates the sentence and remands the case.

COLORADO COURT OF APPEALS                                    **2018COA22**

---

Court of Appeals No. 16CA1446
Jefferson County District Court Nos. 14JD168, 14JD191, 14JD400 & 14JD522
Honorable Ann Gail Meinster, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of J.C.,

Juvenile-Appellant.

---

SENTENCE VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE J. JONES
Fox and Freyre, JJ., concur

Announced February 22, 2018

---

Cynthia H. Coffman, Attorney General, John T. Lee, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

The Noble Law Firm, LLC, Tara Jorfald, Lakewood, Colorado, for Juvenile-Appellant

¶ 1    The juvenile court sentenced J.C., a juvenile, to an indeterminate one-to-two-year term of commitment in the custody of the Division of Youth Corrections (DYC), with a mandatory minimum term of one year.  We conclude that the sentence is illegal, for two reasons.  First, nothing in the juvenile sentencing statutes authorizes an indeterminate sentence to DYC commitment; any such sentence must be determinate.  Second, a mandatory minimum sentence to DYC commitment is authorized only if the juvenile qualifies as a special offender under section 19-2-908, C.R.S. 2017.  J.C. doesn't qualify as such an offender, and therefore the juvenile court had no statutory authority to impose a mandatory minimum sentence.  In deciding this second issue, we hold that a juvenile doesn't qualify as a mandatory sentence offender pursuant to section 19-2-516(1), C.R.S. 2017, or a repeat juvenile offender pursuant to section 19-2-516(2), when the multiple adjudications required by those provisions occur in the same hearing.

¶ 2    Accordingly, we vacate the sentence and remand the case with directions.

## I. Background

¶ 3    J.C. pleaded guilty to charges in three separate cases, pursuant to a global plea agreement, on the same day during a hearing addressing all three cases. She pleaded guilty first to a third degree assault charge, then to a second degree criminal trespass charge, and finally to a second degree assault charge. The court accepted the pleas and adjudicated J.C. delinquent in all three cases.

¶ 4    At the sentencing hearing for all three cases, the prosecutor argued that because there were three adjudications, two of which were for violent offenses, the court should commit J.C. to DYC custody for two years. When the court asked the prosecutor whether she was requesting that the court sentence J.C. as a "mandatory offender," the prosecutor said, "Yes." In sentencing J.C., the court said, "I'm going to impose a DYC commitment, a mandatory minimum of one year, but up to two years." The sentencing orders for each case reflect a sentence of "1-2 YEARS DYC." Corresponding orders to the Department of Human Services (DHS) (which includes the DYC) in each case say, "This juvenile was

additionally found to be: A mandatory sentence (third time) offender pursuant to Sec. 19-2-908, C.R.S."

¶ 5    J.C. filed a motion to correct an illegal sentence under Crim. P. 35(a).  She argued that the court lacked authority to sentence her to a mandatory minimum period of confinement as a mandatory sentence offender because the three adjudications required for the relevant statute to apply had all occurred at the same hearing.  The court denied the motion.  In doing so, the court said it had no "record that [J.C.] was actually sentenced as a mandatory sentence offender.  The minute order does not reflect such a finding and no transcript was filed with the Motion to show that such a finding was made."  Rather, the court said, it had imposed "the mandatory 1 year and a maximum of 2 years in DYC" based on "the totality of the circumstances."  Apparently in the alternative, the court said that nothing in the relevant statute defining mandatory sentence offender, section 19-2-516(1)(a)(I), requires that the three adjudications be entered on separate dates.

¶ 6    J.C. then filed a motion for postconviction relief alleging both ineffective assistance of plea counsel and that she hadn't knowingly, voluntarily, or intentionally pleaded guilty.  Common to

both claims was her assertion that her lawyer hadn't told her that by pleading guilty she could be sentenced as a mandatory sentence offender. The court summarily denied the motion, ruling, as now relevant, that because "it has not been shown that the court relied on this classification in its sentencing," she hadn't shown prejudice. J.C. appeals the court's denial of the Crim. P. 35(c) motion.

## II. Discussion

¶ 7 J.C.'s opening brief argues that the juvenile court erred by summarily denying her petition for postconviction relief because she had alleged that neither her lawyer nor the court had advised her "that she would be sentenced as a repeat juvenile offender" and that she was prejudiced by counsel's deficient performance and the court's failure to advise her. That prejudice was that she wouldn't have pleaded guilty if she'd known she would be sentenced to a mandatory minimum term of confinement.

¶ 8 After reading the parties' briefs and the record, we asked the parties to file supplemental briefs addressing the following four issues:

> 1. Notwithstanding the district court's statements in denying J.C.'s Crim. P. 35(a) motion, did the district court sentence J.C. as

4

a mandatory sentence offender or repeat juvenile offender pursuant to § 19-2-908, C.R.S. 2017?

2. If not, what statutory authority did the district court have to sentence J.C. to a "mandatory minimum" period of commitment?

3. If so, did J.C. qualify as a mandatory sentence offender under §§ 19-2-516(1) and 19-2-908(1)(a)? Explain.

4. If so, did J.C. qualify as a repeat juvenile offender under §§ 19-2-516(2) and 19-2-908(1)(b)? Explain.

¶ 9 Having reviewed the parties' supplemental briefs and the relevant law, we conclude that J.C.'s sentence is illegal. We therefore vacate the sentence. And because we vacate the sentence on which J.C.'s Crim. P. 35(c) claims are premised, we also conclude that her Crim. P. 35(c) motion is moot.

A. We May Consider the Legality of J.C.'s Sentence

¶ 10 Initially, the People invite us to hold that J.C. abandoned the issue of the legality of her sentence because she didn't appeal from the order denying her motion to correct an illegal sentence. They acknowledge that Crim. P. 35(a) authorizes a court to correct an illegal sentence "at any time." Nonetheless, they urge us not to consider this issue because, they argue, (1) the word "may" in that

5

rule creates an option, but not an obligation for an appellate court to vacate an illegal sentence;[1] and (2) therefore we should apply the familiar principle of appellate practice that a party waives for appeal an issue that she doesn't reassert on appeal.

¶ 11 The People's argument, however, overlooks the more directly relevant principle that "[a]llegations that a particular sentence is void or illegal require inquiry into the subject matter jurisdiction of the sentencing court and may not be waived." *Downing v. People*, 895 P.2d 1046, 1050 (Colo. 1995); *see People v. Hinchman*, 196 Colo. 556, 530, 589 P.2d 917, 920 (1978). Indeed, when there's a question as to the court's subject matter jurisdiction, a court has an obligation to address it, even if the parties haven't raised it. *See People v. S.X.G.*, 2012 CO 5, ¶ 9; *Allison v. Engel*, 2017 COA 43, ¶ 22; *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (an appellate court has an "obligation" to consider a trial court's jurisdiction, even if the parties conceded it); *Archer W. Contractors, Ltd. v. Benise-Dowling & Assocs., Inc.*, 33 So. 3d 1216,

---

[1] Crim. P. 35(a) says that "[t]he court may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time."

1270 (Ala. 2009) ("[W]e are obligated to address the absence of [a trial court's] subject-matter jurisdiction *ex mero motu*.").

¶ 12 The "at any time" language of Crim. P. 35(a) merely gives effect to this principle. So a defendant may raise the legality of his sentence for the first time on appeal. *Downing*, 895 P.2d at 1050; *Hinchman*, 196 Colo. at 530, 589 P.2d at 919-20. And a court may raise the issue on its own. *People v. White*, 179 P.3d 58, 61 (Colo. App. 2007) (citing *Guerin v. Fullerton*, 154 Colo. 142, 144, 389 P.2d 84, 85 (1964)). In any case, save perhaps when issue preclusion or some other similar doctrine applies, *see In re Marriage of Mallon*, 956 P.2d 642, 645-46 (Colo. App. 1998), a substantial question as to a court's subject matter jurisdiction, whenever or however raised, isn't one a court is free to duck.

¶ 13 We decline the People's invitation.

## B. J.C.'s Sentence Is Illegal

¶ 14 "An illegal sentence is one that is not authorized by law, meaning that it is inconsistent with the sentencing scheme established by the legislature." *People v. Jenkins*, 2013 COA 76, ¶ 11; *see Delgado v. People*, 105 P.3d 634, 636 (Colo. 2005). While it's true that "a trial court normally has broad discretion to craft a

sentence it deems appropriate for a particular [juvenile] offender," *A.S. v. People*, 2013 CO 63, ¶ 15, "in exercising its discretion, the sentencing court may not depart from the statutory sentencing scheme to impose what it considers to be a more appropriate sentence," *People in Interest of J.S.R.*, 2014 COA 98M, ¶ 34; *see People v. Dist. Court*, 673 P.2d 991, 995 (Colo. 1983) (A court "may not impose a sentence that is inconsistent with the terms specified by statutes."). This is so because "it is the prerogative of the legislature to define crimes and prescribe punishments." *Fierro v. People*, 206 P.3d 460, 461 (Colo. 2009).

¶ 15    We review the legality of a sentence de novo. *See People v. Bassford*, 2014 COA 15, ¶ 20; *Jenkins*, ¶ 11. This case requires us to interpret statutes to determine the legality of the sentence, and such interpretation we also review de novo. *See, e.g., Marsh v. People*, 2017 CO 10M, ¶ 19.

1. Sentencing to DHS Commitment Generally

¶ 16    Section 19-2-907, C.R.S. 2017, of the Children's Code delineates a juvenile court's sentencing options. It limits a court's authority to sentence a juvenile to DHS commitment, as opposed to other sentencing options, to essentially two situations: (1) as

allowed when the court adjudicates the juvenile a special offender pursuant to section 19-2-908, *see* § 19-2-907(2); or (2) as allowed when the court adjudicates the juvenile for an offense that would constitute a felony or misdemeanor if committed by an adult, pursuant to section 19-2-909(1)(a), C.R.S. 2017, or section 19-2-921(3)(c), C.R.S. 2017, *see* § 19-2-907(1)(a).  Applying this framework to this case gives rise to two questions.  Can a juvenile court sentence a juvenile to an indeterminate term of DHS commitment, as the juvenile court did in this case?  And when is a mandatory minimum term of DHS commitment required?  We answer these questions in turn, and in answering the second also decide whether J.C. qualifies for mandatory minimum sentencing.

### 2.  Indeterminate Sentencing

#### a.  A Court Must Sentence a Juvenile to a Determinate Sentence

¶ 17      As noted, section 19-2-907 catalogs a court's sentencing options in a juvenile case.  It doesn't say anything expressly about determinate or indeterminate sentencing (it cross-references other sentencing statutes), but other statutes do.  Section 19-2-921(3)(a) flatly says, "As provided in section 19-2-907, commitment of a juvenile to the department of human services shall be for a

9

determinate period." And the statutes specifically addressing certain categories of juveniles who may (or must) be sentenced to DHS commitment expressly say that a sentence imposed thereunder shall be for a "determinate period." §§ 19-2-601(5)(a)(I), C.R.S. 2017 (aggravated juvenile offenders); § 19-2-909(1)(a) (a juvenile adjudicated for an offense that would constitute a felony or misdemeanor if committed by an adult); § 19-2-921(3)(b) (same as section 19-2-601(5)(a)(I)); § 19-2-921(3)(c) (same as section 19-2-909(1)(a)).

¶ 18    Perhaps this is a good place to explain what the term "determinate sentence" means, and to draw the distinction between such a sentence and an indeterminate sentence.

¶ 19    For purposes of juvenile sentencing, the term "determinate period" is actually defined by statute. Section 19-1-103(40.5), C.R.S. 2017, says that it

> means that the department of human services may not transfer legal or physical custody of a juvenile until the juvenile *has completed the period of commitment* imposed by the court, unless otherwise ordered by the court; except that the department may release the juvenile on parole *prior to completion of the determinate period,* as provided in section 19-2-1002.

(Emphasis added.) This definition obviously contemplates a point in time at which the period of commitment is deemed completed. Absent some such definitive point in time, authorities contemplating a transfer of legal or physical custody or parole couldn't know when to take such action.

¶ 20 The definition in section 19-1-103(40.5) is therefore consistent with the common understanding of determinate sentence: a sentence for a fixed or definite length (for example, one year). An indeterminate sentence, on the other hand, is a sentence for a range of time (for example, one to two years). *See Hildebrandt v. State*, 770 N.E.2d 355, 359-60 (Ind. Ct. App. 2002) (discussing the difference between a determinate sentence and an indeterminate sentence); *State v. Artis*, 893 N.W.2d 421, 427 (Neb. 2017) (same); *compare* § 18-1.3-404(1), C.R.S. 2017 (governing duration of sentences for felonies and providing that such sentences shall be for a "definite term"), *with* § 18-1.3-904, C.R.S. 2017 (a court must "commit a sex offender to the custody of the department for an indeterminate term having a minimum of one day and a maximum of his or her natural life").

¶ 21    With this understanding of determinate sentences in mind, we see that sections 19-2-601(5)(a)(I), -909(1)(a), -921(3)(b), and -921(3)(c) plainly don't allow for sentences to a range; rather, they require sentences to fixed, definite periods.

¶ 22    Only one other statute, section 19-2-908, provides for sentencing juveniles to DHS commitment.  Unlike the other statutes mentioned above, it doesn't use the words "determinate period."  What it requires (subject to a court's determination otherwise), is that special offenders be sentenced to DHS commitment for a term of "not less than one year."  § 19-2-908(1)(a), (b), (c); *see also* § 19-2-908(1)(d) (providing that aggravated juvenile offenders, a class of special offender, must be sentenced according to section 19-2-601); § 19-2-601(5)(a)(1)(B), (C) (requiring a sentence for "a determinate period of at least three" years).  Despite the fact section 19-2-908 doesn't use the term "determinate period," we think it clear enough that it also contemplates determinate sentences, for two reasons.

¶ 23    First, as noted, section 19-2-921(3)(a) says that sentences to DHS commitment provided for under section 19-2-907 "shall be for a determinate period," and section 19-2-907 expressly refers to

sentencing of special offenders under section 19-2-908.  § 19-2-907(2).

¶ 24    Second, the apparent purpose of the sentencing provisions in section 19-2-908 is to limit the court's discretion in setting sentences for special offenders by requiring mandatory minimum terms of commitment.  Nothing in that statute even hints at indeterminate sentencing.

¶ 25    Based on our review of the entire juvenile sentencing scheme, we conclude that a court may not sentence a juvenile to DHS commitment for an indeterminate term: a determinate sentence is required.

### b.  J.C.'s Indeterminate Sentence Is Illegal

¶ 26    The court sentenced J.C. to one to two years in DYC.  That's an indeterminate sentence.  It's therefore illegal.  We vacate the sentence and remand for resentencing.

### 3.  Mandatory Minimum Sentencing

¶ 27    Even though we've decided that J.C.'s indeterminate sentence is illegal, we address whether the court may sentence her to a mandatory minimum period of commitment because the issue is

likely to arise on remand. We conclude that there's no mandatory minimum provision that applies to J.C.'s three adjudications.

### a. Sentencing as a Special Offender

¶ 28    Again, section 19-2-907(2) says a court shall sentence a juvenile adjudicated as a special offender pursuant to section 19-2-908. Section 19-2-908, in turn, creates four categories of special offenders, two of which are relevant here: mandatory sentence offenders and repeat juvenile offenders. § 19-2-908(1)(a), (b).[2] When a court sentences a juvenile as a mandatory sentence offender or repeat juvenile offender, it may sentence her to DHS commitment "for not less than one year." § 19-2-908(1)(a), (b). This "not less than" language is synonymous with a mandatory minimum sentence.[3]

¶ 29    So this statute clearly authorizes (indeed, if applicable, presumptively requires) a mandatory minimum term of DHS

---

[2] The other categories are violent juvenile offenders and aggravated juvenile offenders. § 19-2-908(1)(c), (d) C.R.S. 2017; *A.S v. People*, 2013 CO 63, ¶ 16. No one asserts that J.C. qualifies as either.

[3] Under section 19-2-908, the court may sentence a special offender to "an alternative sentence or a commitment of less than one year" if it determines that such a sentence or term "would be more appropriate." § 19-2-908(1)(a), (b), (c).

commitment.  We turn, then, to whether J.C. qualifies as either a mandatory sentence offender or a repeat juvenile offender.

### i.  J.C. Isn't a Mandatory Sentence Offender

¶ 30     At the outset, we again note that after J.C. filed her motion to correct an illegal sentence under Crim. P. 35(a), arguing that the court didn't have any authority to sentence her as a mandatory sentence offender, the court said that it didn't have "a record" that it had sentenced J.C. as a mandatory sentence offender.  The People say the court didn't sentence J.C. as a mandatory sentence offender.  (J.C. doesn't take a clear position on the question.)

¶ 31     Appellate courts generally defer to a lower court's construction of its own rulings.  *See State v. Denya*, 986 A.2d 260, 269 (Conn. 2010); *Commonwealth v. Lebo*, 713 A.2d 1158, 1161 (Pa. Super. Ct. 1998) (affording "great deference" to a court's interpretation of its own order); *Uintah Basin Med. Ctr. v. Hardy*, 179 P.3d 786, 788 (Utah 2008) (same); *Leitao v. Commonwealth*, 573 S.E.2d 317, 319 (Va. Ct. App. 2002) ("We defer to the trial court's interpretation of its own order.").  But in this case we can't.  In the sentencing orders sent to DHS, the court said it was sentencing J.C. as a mandatory offender, and the court said at sentencing that it was sentencing

J.C. to "DYC commitment, mandatory minimum one year." We also observe that, in ruling on J.C.'s post-sentencing motions, the court appears to have been less than certain that it hadn't sentenced J.C. as a mandatory sentence offender. In any event, we feel we must decide if it may do so on remand, particularly in light of the juvenile court's alternative ruling that J.C. is eligible for sentencing as a mandatory sentence offender.

¶ 32      Section 19-2-908(1)(a) provides that "[t]he court shall place or commit any juvenile adjudicated as a mandatory sentence offender, as described in section 19-2-516(1), out of the home for not less than one year."[4] Section 19-2-516(1) defines such an offender, in relevant part, as a juvenile who "*[h]as been adjudicated* a juvenile delinquent twice . . . and . . . [i]s *subsequently adjudicated* a juvenile delinquent." (Emphasis added.)

¶ 33      A guilty plea that the court accepts plainly constitutes an "adjudication" under the statute, so there's no question J.C. was "adjudicated" a total of three times by entering three guilty pleas.

---

[4] Section 19-1-103(85), C.R.S. 2017, defines "[p]lacement out of the home" as "placement for twenty-four-hour residential care in any facility or center operated or licensed by the department of human services."

*See* § 19-1-103(2) ("'Adjudication' means a determination by the court that . . . a juvenile has pled guilty to committing a delinquent act."). But was J.C. "subsequently adjudicated" when she entered her third guilty plea in the same hearing as the first two? We conclude that she wasn't.

¶ 34 When interpreting a statute, we must give effect to the General Assembly's purpose or intent in enacting the statute. *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001). We start by attributing to the words and phrases used in the statute their plain and ordinary meanings. *People v. Perez*, 238 P.3d 665, 669 (Colo. 2010). And we consider the words or phrases at issue in context — both in the context of the statute of which the words or phrases are a part and in the context of any comprehensive statutory scheme of which the statute is a part. *People v. Hill*, 228 P.3d 171, 173-74 (Colo. App. 2009); *see Doubleday v. People*, 2016 CO 3, ¶ 20 (a court must "read the scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts"); *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15.

¶ 35 If, after applying these principles, we determine that the relevant words or phrases are unambiguous, we enforce them as

17

written, and we won't resort to other rules of statutory construction. *People v. Zapotocky*, 869 P.2d 1234, 1238 (Colo. 1994); *People v. Shores*, 2016 COA 129, ¶ 16.

¶ 36    Again, the plain language of the statute defining mandatory sentence offender requires that the juvenile "*[h]as been* adjudicated a juvenile delinquent twice" and "*[i]s subsequently* adjudicated a juvenile delinquent." § 19-2-516(1)(a)(I), (b)(I) (emphasis added). Though the statute doesn't define "subsequent," we know that it entails the passage of some time. *See* Black's Law Dictionary 1656 (10th ed. 2014) (defining "subsequent" as "occurring later; coming after something else"). And, of course, "has been" indicates the same thing — that the first two adjudications occurred before the first. *See A.S.*, ¶ 17 ("A 'mandatory sentence offender' is a juvenile who is adjudicated delinquent (and/or revoked from probation for a delinquent act) for a third time.").

¶ 37    The People essentially argue that "subsequent" can mean as little as a few minutes.[5] Perhaps that's so in other contexts. But in

---

[5] Oddly, in our view, J.C. appears to buy this argument. The concession is troubling, but not controlling. *See People v. Knott*, 83 P.3d 1147, 1148 (Colo. App. 2003) ("We are not bound by the parties' concessions as to the applicable law.").

the context of this statute, such an interpretation would rob the word "subsequent" of any real meaning. *See People v. J.J.H.*, 17 P.3d 159, 162 (Colo. 2001) (we don't presume the legislature uses language idly, with no intent that meaning should be given to it). For "subsequent" to retain any significance in this context, it must entail the passage of enough time for the juvenile to experience the consequences, i.e., the sentences, of her first two adjudications. Were the passage of such time irrelevant, the General Assembly could've simply defined a mandatory sentence offender as a juvenile who has been adjudicated a juvenile delinquent three times, or who has committed three acts for which the juvenile has been adjudicated a juvenile delinquent. Instead, the General Assembly chose to define the term in a way that turns on the timing ("has been," "subsequent") of the adjudications as much as the number of adjudications.[6]

---

[6] The People's reliance on *People in Interest of J.C.P.*, 151 P.3d 635 (Colo. App. 2006), is misplaced. In that case, the division said the mandatory offender provision "makes no reference to the date *of the commission of the offense* underlying the prior adjudications. It requires only that a juvenile be adjudicated delinquent after the entry of two prior delinquency adjudications." *Id.* at 636-37. This case doesn't involve any question as to the effect of the dates of the offenses.

¶ 38    The clear objective of the statutory scheme reinforces our interpretation.  *See Martin*, 27 P.3d at 851-52 ("In interpreting a comprehensive legislative scheme, we must construe each provision to further the overall legislative intent behind the statutes.").  As the supreme court has put it,

> [o]ne of the fundamental differences between the juvenile system of justice and an adult criminal prosecution "is the overriding goal of the Children's Code to provide guidance and rehabilitation of an adjudicated delinquent child in a manner consistent with the best interest of the child and the protection of society rather than fixing criminal responsibility, guilt, and punishment."

*J.J.H.*, 17 P.3d at 163 (quoting *S.G.W. v. People*, 752 P.2d 86, 91 (Colo. 1988)); *see also A.S.*, ¶ 14 ("The juvenile justice system aims to provide guidance, rehabilitation, and restoration for the juvenile and to protect society, rather than focusing principally on criminal conduct and assigning criminal responsibility, guilt, and punishment.").  This emphasis on rehabilitation indicates that the General Assembly intended to provide juvenile offenders with an opportunity to benefit, and learn from, prior sentencing before facing enhanced sentencing for a third adjudication.

¶ 39      For these reasons, we conclude that J.C. wasn't "subsequently adjudicated" for a third time. It follows that the court couldn't legally have sentenced her to a mandatory minimum term of commitment as a mandatory sentence offender. Her sentence is therefore illegal for this reason as well.

### ii. J.C. Isn't a Repeat Juvenile Offender

¶ 40      Section 19-2-516(2) defines a repeat juvenile offender as one who "*has been previously adjudicated* a juvenile delinquent and is adjudicated a juvenile delinquent for a delinquent act that constitutes a felony." (Emphasis added.)

¶ 41      The People (and J.C., for that matter) argue that J.C. qualifies as a repeat juvenile offender because she first pleaded guilty to what would, if she were an adult, constitute two misdemeanors and then pleaded guilty to what would, if she were an adult, constitute a felony (the second degree assault charge). So, the argument goes, she "was previously adjudicated" (for the two misdemeanors) before being adjudicated for the felony. But this argument fails for the same reasons the People's argument concerning mandatory sentence offenders fails, and more.

21

¶ 42    We interpret "previously" as the reciprocal of "subsequently" in

section 19-2-516(1).  The plain language of this provision similarly

emphasizes a passage of time between the first adjudication and the

latter.  And, of course, the statute's emphasis on rehabilitation

applies to this provision as well.  These observations lead us to read

"previously" to require time for a juvenile offender to experience the

consequences of her misdemeanor sentence before facing an

enhanced sentence for an ensuing felony.

¶ 43    Additionally, to interpret the provision as the parties urge

could lead to absurd results.  *See, e.g.*, *Mosley v. People*, 2017 CO

20, ¶ 16 ("[W]e avoid statutory interpretations that defeat legislative

intent or lead to absurd results.").  If we accepted the parties'

interpretation, a juvenile such as J.C. would face a different

sentence depending on which plea she entered first during a

hearing on multiple charges; if she pleaded guilty to the

misdemeanor first, the court would be required to sentence her as a

repeat juvenile offender, but if she pleaded guilty to the felony first,

the provision wouldn't apply.  We can't fathom that the General

Assembly intended such an arbitrary outcome.

¶ 44    In sum, we conclude that section 19-2-908 also excludes J.C. from the category of repeat juvenile offenders.  Therefore, the court couldn't legally have sentenced her to a mandatory minimum term of commitment as a repeat juvenile offender, and can't do so on remand.

### b.  Sentencing Under Section 19-2-921

¶ 45    In her supplemental brief, J.C. says that if the court didn't sentence her as a special offender, it didn't have statutory authority to sentence her to a mandatory minimum of one year of DHS commitment.  The People, however, seem to argue that section 19-2-921(3)(c) provides such authority.  Their argument fails.

¶ 46    Section 19-2-921(3)(c) allows a court to commit a juvenile to DHS if the court adjudicates the juvenile "for an offense that would constitute a felony or a misdemeanor."  But, as discussed above, that provision simply allows a sentence to commitment only for a "determinate period" that "shall not exceed two years."  It sets a ceiling, but unlike section 19-2-908, sets no floor.  A court therefore isn't limited to imposing any particular minimum period of

commitment in sentencing a juvenile under this provision.  Put another way, it can't be read as allowing a mandatory minimum.[7]

### III.  Conclusion

¶ 47     The Children's Code sentencing scheme didn't afford the court the authority to impose an indeterminate sentence or a sentence to a mandatory minimum term of commitment.  Consequently, the sentence is illegal.  We therefore vacate the sentence and remand the case to the district court with directions to resentence J.C.  Because we vacate the sentence on which J.C.'s Crim. P. 35(c) claims are premised, those claims are moot.

JUDGE FOX and JUDGE FREYRE concur.

---

[7] This analysis also applies to section 19-2-909(1)(a), C.R.S. 2017, which is strikingly similar to section 19-2-921(3)(c), C.R.S. 2017. And it applies to sentencing of aggravated offenders under section 19-2-601(5)(a), C.R.S. 2017, which also requires imposition of a "determinate" sentence.